## The People ex rel. School District No. 1 of the Town- ship of Portage v. William Ryan, Supervisor of the Township of Adams.

*Erection of New Townships: Liability for existing debts:* The erection and or- ganization of a new township severs its territory from the School District within which it was formerly embraced, and there is no general provision of law which charges the property within the new township, with the obligation to pay any debts created for school purposes, which existed at the time of the erection of the new township.

*Heard October 9. Decided October 12.*

Application for mandamus :

On the petition of School District, No. One, of the town-

ship of Portage, to compel the Supervisor of the Township of Adams to levy certain taxes.

In 1863 the School Inspectors of Portage had organized the entire township into one graded and high school district, and at the annual meeting of the district in that year, a tax of $5,000 and the issue of bonds for a loan of $15,000, for the erection of school buildings, were authorized. These acts were legalized by Act No. 52, of the Legislature of 1864, with a proviso, that the act should not be construed to prohibit the Board of School Inspectors of said township from setting off or dividing said township into primary school districts, under the law regulating the same, whenever in their discretion the interests of education may require it. " After the voting of said bonds" a portion of the township of Portage was set off ·and organized by the Supervisors of Houghton County into a new township by the name of Adams; which organization was perfected at the annual township meeting in April following by the election of township officers, who duly qualified and entered on the performance of their duties.

At the annual meeting of the relator in 1867, taxes for various school purposes, including the payment of teachers, interest on the bonded debt, and $8,000 of the principal, were voted, amounting in all to the sum of $19,500. At a meeting in October, 1867, of the Supervisors of the townships, then five in number, which, at the organization of the graded and high school district were included within its bounds, the tax assessed by the district was proportioned to the several townships; that of the township of Adams being fixed at $3,087 98. The Supervisor of the township refused to levy it: and the liability of the township of Adams to pay this tax is the question before the Court.

*L. S. Trowbridge and G. V. N. Lothrop,* for Relator.

*C. I. Walker and E. C. Hinsdale,* for Defendant.

THE PEOPLE v. RYAN.

GRAVES J.

The main question to be considered in this case, is, whether the creation of the township of Adams, by the Board of Supervisors out of territory, embraced by School District No. One, of Portage, severed all connection between the district and township; or left the people of the latter subject to the district, and liable for a portion of its debts. In considering this question our attention is properly confined to the case as it stands before us, and our decision will be regulated by what has actually occurred, and not by any supposition of what might have taken place, or what may hereafter be done.

The relators expressly aver in the petition that the township of Adams was set off from the territory embraced in the district, and organized; and in taking this proceeding against the respondent as the Supervisor of that township, they necessarily assert the complete existence of the latter.

The proceedings of the Board of Supervisors in erecting the township are not before us, and as the record is silent on the subject, and as no claim of a contrary kind is interposed, it is right to presume that the Board made no attempt to impose upon the people of the township any portion of the existing debt of the district, or to subject them to any of the corporate powers, or to the jurisdiction of the latter. And, whether with or without the aid or sanction of an act of the Legislature, directed to that end, any such action could be supported, is a point we do not consider.

That the Legislature were of opinion that no portion of the debts of the district would devolve on the people of the new township, without an express enactment on the subject, is to be inferred from the passage of the law of 1867, which required the Board to apportion the debts

when any new township should be formed. *Vol. 2 Sess. L. 1867 p. 1,032.*

This law however seems to have been passed a short time after the erection of the township by · the Board, and and in all probability without any knowledge by the Legislature that the township had been already formed. The relators do not claim that it had the effect to make the tax-payers of Adams liable for any portion of the debts in question.

Assuming then, as we must, that the new township was duly formed ˙and organized by legislative action under and according to the Constitution, and without any special conditions or restrictions, that it became one of the townships of Houghton County by the same kind of general action by which new townships are commonly, if not always formed, the question recurs, did it when thus formed and organized, possess the same legal faculties, the same immunity from obligations, the same right to order and manage its municipal affairs, as are conceded by the laws of the State to new townships generally?

Was it not required to elect all the officers and to take the steps enjoined by the Constitution and laws upon new townships?

These questions will admit of but one answer. Upon becoming one of the organized townships of the State without special conditions, it became a " township " within the meaning of the Constitution and laws, and clothed with the same rights and powers and subject to the same duties which belong to new townships generally. It was the equal in rights and duties of all new townships, not specially fettered by particular legislation.

Such being the *status* of the new township, the people were entitled and required to conform in all respects to the general laws of the State bearing upon townships and township affairs.

They were required to elect school officers, (*Art. 11,* § *1 Constitution*); organize school districts, ( *1 Comp. L. pp. 743, 731, 732, 759, 760, 755* ); and to institute and set in motion a complete school system from the beginning.

They were entitled to exercise their own discretion, within such limits as the general laws prescribe, respecting the schools they would support; and certainly they could not be compelled to support any other, however desirable in the opinion of the relators, unless constrained so to do by positive law. Nor could the discretion of the people of the new township be in this respect cramped or overborne by the previous action of the school organization in territory formerly comprehending that of the township, unless in virtue of some special statute.

It is nevertheless maintained on the part of the relators that the Legislature by the act of 1855, (*1 Comp. L.* § *2,411*) declared that the boundaries of a school district having a Union School should not be changed without the written consent of the majority of the District Board of such district, and that this was equivalent to saying that no action of the Board of Supervisors in dividing towns, or erecting new ones, should have the effect to change or alter the boundaries of a school district having a Union School.

But this position cannot be supported, even if it be conceded that this law is applicable to the graded schools established under the act of 1859.

The law of 1855, (§ *2,411 Comp. L.*) if still in force, could never have been intended to take from the Board of Supervisors their constitutional power to erect townships, since, that would have been impossible, and we must therefore suppose the prohibition was intended for the Inspectors and inhabitants in whom was the exclusive power to form and alter school districts. The law of 1855 could, therefore, have formed no impediment to the action of the Board of Supervisors, or in any manner have modified the consequences of such action.

The view we have taken of the question which has been considered makes it unnecessary to notice the other and less important points, which were argued for the respondent.

We are satisfied that the rights, powers and duties of the township, as erected, are wholly inconsistent with the claim set up by the relators.

The position taken by the district could only be sustained by abridging some of the present legal rights and powers inherent in the township, and by dispensing with some of the duties now cast by law upon it.

We are therefore of the opinion that the motion must be denied with costs.

CAMPBELL J.

The statutes, while they might have made such a provision without difficulty, have not authorized primary school districts of the ordinary kind to exist separately, and under separate control, within a graded district. Two sets of officers are not allowed, at the same time, to act independently within the same organization. And the distribution of school moneys, and other necessary arrangements, could not be readily made on any such basis, without further legislation.

When, therefore, the statute of 1864, legalizing the erection of the township of Portage into a single district, provided further that it should not prevent the school Board of the township from creating new districts whenever they might find it expedient, it was equivalent to placing this district, except as to its internal management, on the same footing with ordinary districts, and giving to the School Board the same power to divide it, that they would have had in case it had been a common district. In other words, it was so far made subject to the ordinary incidents of the town authority.

As the school Board of Portage township could not law-

fully exercise power in another township, it followed that, when the town of Adams was set off, that territory fell under the control of the school Board of Adams, and they have exercised their powers by organizing a new district, and have thereby severed it from the old graded district, if the organization of the town had not already done so— upon which I am not clear, and express no opinion.

The liability to taxation for any school purpose must exist by statute before it can be enforced in the ordinary way. The statute of 1867 shows plainly enough that the Legislature then intended to make the whole of the original district responsible for the loan made on its credit. But that law is not operative in this case; and there is no other law providing for any such state of facts as we find here. Until some new law provides some rule of apportionment the Courts cannot interfere to devise one.

I agree, therefore, in refusing the mandamus.

COOLEY CH. J., and CHRISTIANCY J., concurred in the foregoing opinions.