THE PEOPLE *ex rel.* O. S. RUSSELL *vs.* THE INSPECTORS AND AGENT OF THE STATE PRISON.

The Revised Statutes of 1846 and the Amended Constitution provide, that "No mechanical trade shall hereafter be taught to convicts in the State prison, in this State, except the making of those articles of which the chief supply for the consumption of the country is imported from other States or countries." Under these provisions, and the statute regulating the State prison, it is for the Agent of the prison to determine the question what trades are within its spirit. There is no Court to which jurisdiction to make the inquiry is given, and no process for instituting it. This Court will not, therefore, interfere by mandamus to control the Agent in the exercise of this discretion.

A private individual can apply for a writ of mandamus only in a case where he has some private or particular interest to be subserved, or some particular right to be protected by the aid of this process, independent of that which he holds in common with the public at large. Whether a private individual can apply for the writ to restain the Agent of the State prison from teaching the trade of, or the manufacture of the articles made by the relator, *quere*.

Application for a mandamus.

*Hughes & Van Arman*, for relator.

*Howard*, Attorney General, and *Campbell*, for defendants.

By the Court, COPELAND, J.

This case arises on the return to a rule to show cause why a writ of *mandamus* should not issue, commanding the respondents to desist from teaching to convicts in the State prison the mechanical trade of wagon making, and from manufacturing in said prison wagons with convict labor.

This application is founded upon Section 16, of Chapter 172, of the Revised Statutes of 1846, which is in these words : " No mechanical trade shall hereafter be taught to convicts in the State prison of this State, except the making of those articles of which the chief supply for the consumption of the country is imported from other States or countries." This provision of the statute has since been incorporated into our present Constitution. (§ 3, *Art.* 18.)

The writ here asked is a command issuing from a superior to an inferior Court or tribunal, or to some person or corporation requiring them to do some act, or to perform some particular thing in the writ to be specified, and which the superior Court has previously determined to be right and just. In its application, it may be considered as confined to cases where the party has no other remedy. (*Rex.* vs. *Bank of England,* 1 *B. and Ald.*, 622; *Rex.* vs. *Archbishop of Canterbury,* 8 *East.*, 213; *Carr* vs. *Rosseter,* 2 *Binn.*, 360.) It also appears, from these and other authorities, that the writ will not issue unless there appears to be a specific legal right.

In the case of Wellington *et al.* Petitioners (16 *Pick.*, 85), Shaw, C. J., says : " The general rule of law is that a private individual can apply for a writ of mandamus only in a case where he has some private or particular interest to be subserved, or some particular right to be preserved or protected by the aid of this process, independent of that which he holds in common with the public at large ; and it is for the public officers exclusively to apply, where public rights are to be

subserved." In support of this he cites Rex. *vs.* Merchant Tailors' Co. (2 *Barn. and Ad.*, 115), and in Sanger *vs.* Co. Commissioners (25 *Maine*, 291), it is said a private individual can apply only when specially interested. Applying this rule to the relator in this case, it is at least a question of some doubt whether, under the provision of the Constitution, he can be said to have such clear legal right, such special interest in the subject matter of his application, as to authorize him to make it. It is true, it appears that the relator is a wagon maker, and he swears that he has sustained injury by the teaching of that trade to convicts, and by the manufacture of wagons in the prison. But it may be, that that is an injury which, within the intent and spirit of the act, he sustains in common with the community generally. The farmer and other consumers of the article in question may, in consequence of the manufactory in the prison, believe that they are injured, perhaps, by having imposed upon them an inferior article, or in some other imaginable way.

Society, generally, may sustain a moral injury by having the workshops of our artizans filled with past convicts. The object of the prohibitory Act is not specified, yet no one can think that any such interest would entitle a party to make this application. Again : it may be observed that the provision of the Constitution does not forbid the manufacture, in terms at any rate, of any article in the prison, but that no trade shall be taught there, except the manufacture of those articles the chief supply of which is imported from other States. Now the relator does not allege that he has been injured by the trade of wagon making having been taught to the convicts simply, but that he has been injured by that, and by the manufacture of wagons in the prison, which, as we have seen, the language of the Constitution does not forbid. But admitting that the object of the provision of the Constitution and the statute was what it is claimed to have been, not only to prohibit the teaching of certain trades, but the manufacture

of certain articles, and designed to protect the interests of certain classes of mechanics, and that, therefore, the relator has such special interest in the matter as will bring him within the rule of law upon the subject, and entitle him to make this application. Still we think the relator has mistaken his remedy; that the relief he seeks cannot be obtained under a *mandamus*. A mandamus is not a preventive writ. Its office is to put inferior tribunals or public persons in motion. It commands the performance of ministerial acts, or being addressed to subordinate judical tribunals, requires them to exercise their functions, and render some judgment in cases before them. (*Ex parte, Nash,* 15; *Ad. and Ellis,* 15, 92; *Chase* vs. *Blackstone,* 10 *Pick.,* 242; *Strong, Petitioner,* 20 *Pick.,* 848.)

In the latter case the Court say: "In every well constructed Government, the highest judicial authority must necessarily have a supervisory power over all inferior or subordinate tribunals, magistrates, and all others exercising public authority. If they commit errors, it will correct them. If they refuse to perform their duty, it will compel them. In the former case, by writ of error; in the latter, by *mandamus.*" The office sought of the writ in this case, is to restrain the defendants from doing certain things they are alleged to have in contemplation, and directing them to undo what they have already done, in the exercise of the proper functions of their office. It appears by the answer of the defendants, that some years since Wm. C. Pease, then agent of the State prison, entered into a contract with Davis, Austin & Co., by which he agreed "to let or sell to them for five years, commencing on or about the first day of May, 1852, the services of from twenty-five to fifty convicts confined in said prison, to be employed in the business of wagon, sleigh and carriage making in said prison, or within the walls of the yard thereof; which said number of convicts was, afterwards, by contract between said parties, increased from fifty to eighty; that, for

the last year, about eighty of such convicts have been employed under said contracts, and which are now in full force, and will not expire until on or about the first of May, 1857." And they further say, "that no one of the convicts in said prison is, or has been employed during the past year in said prison, in making wagons, except under said contracts." Under statute regulations, the Inspectors of the State prison are invested with general supervisory power over all matters connected with the prison, its government, discipline, contracts for work, etc. All the transactions and dealings on account of the prison, shall be conducted by and in the name of the Agent, who shall be in law capable of suing and being sued, etc., and "whenever the Inspectors shall so direct, it shall be the duty of the Agent to make contracts from time to time, for the labor of the convicts confined in said prison, or of any such convicts, with such persons and upon such terms as may be deemed by the Agent most beneficial to the interests of the State." (*Rev. Stat.*, § 27, *Ch.* 172.) Here we find authority for the Agent to make the contract set forth in the answer. It is true, that in making such contract, in pursuance of this statute, it is his duty to take care that he does not infringe upon the provision under which these proceedings have been instituted. But who is to determine this question—who determine what trades are within the spirit of the Constitution? There can be but one of two ways: either the Agent must determine for himself, or he must get some Court to do it. In either case the inquiry is of a judicial or discretionary nature. But there is no Court to whom the jurisdiction to make this inquiry is given, and no process appointed for instituting it; consequently it must follow, that no Court can take jurisdiction, or when taking it, can properly conduct the statistical inquiry. It then leaves the Agent in the first instance to determine the question for himself. It is another well established rule, governing these cases, that where the inferior tribunal has discretionary power, and pro-

ceeds to exercise it, we have no jurisdiction or power to control that discretion by *mandamus*. (*The People* vs. *Sup. of Albany*, 12 *J. R.*, 414; *Bright* vs. *Sup. of Chenango*, 18 *Ib.*, 242; *Rex* vs. *Justices of Middlesex*, 4 *Barn. and Ald.*, 300.) In the latter case, Abbott, C. J., says, "there is not an instance where the King's Bench has granted a *mandamus* to compel an inferior Court to come to any particular decision." So in other cases the English Courts have said, it will not interfere by *mandamus*, to rectify the doings of an inferior tribunal where they have done wrong, and where there is no other remedy. (*Rex* vs. *Justices of Wilts*, 2 *Chit. R.*, 259.)

Whether the decision of the Agent is final or not, and in no way subject to revision, it is not necessary to determine. It is only necessary now to say, the relator cannot obtain the relief he seeks under the writ prayed for.

Motion denied.

Present, COPELAND, BACON, WING, PRATT, GREEN, MARTIN, and DOUGLASS, J. J.