# The People on the relation of the Attorney General v. James Holihan.

*Constitutional law : Legislative power: City boundaries : Representative districts.* The legislature has no authority under our constitution (*Art. IV.* § 4) to enlarge the boundaries of a city by annexing to it parts of adjoining townships in such a manner as to interfere with the boundaries of representative districts, at a time when any alteration of representative districts is forbidden by the constitution.

*Representative districts : Alteration of boundaries.* Electors cannot be residents of one district and at the same time be allowed to vote in another; and a law which transfers them from one district to another by a change of city boundaries is as much an alteration of the district as it would be if the same result were brought about in a different way.

*City limits : Representative districts.* Such an enlargement of city limits cannot be justified as the exercise of a distinct legislative power to accomplish an authorized end to which the interference with the integrity of the representative district was merely consequential and incidental; the inhibition is of any alteration of such districts, and the result being interdicted absolutely may not lawfully be brought about by indirection.

*Quo warranto: Office : Intrusion.* One exercising the office of alderman by virtue of an election from a ward thus sought to be added to the city of Detroit, is held guilty of intrusion, and judgment of ouster is entered against him.

*Heard January 29. Decided January 30.*

Information in the nature of *quo warranto.*

*D. C. Holbrook*, for the relator.

*William P. Wells* and *Theodore Romeyn*, for the respondent.

GRAVES, CH. J.

This is an information filed by the attorney general against the defendant for intruding into and usurping the office of alderman in the city of Detroit.

The final purpose of the proceeding is to question the constitutional validity of the act entitled "An act to enlarge the corporate limits of the city of Detroit and to create an additional ward in said city," approved April 12, 1873; and also an act of the same session to correct this last, entitled "An act to detach certain territory from the townships of Hamtramck and Grosse Point, and to annex the same to the city of Detroit."

By this legislation it was sought to detach from the township of Hamtramck and annex to the city certain territory, and unite part of it to the tenth ward, and erect the residue into a new and additional ward designated as the eleventh. The defendant was recently elected as an alderman of this ward, and now assumes and claims to be legally in as such alderman, and to be entitled to exercise all the rights and powers of a lawful member of the common council of the city. At the time of the passage of the act, and when it took effect, the territory so detached by it from the township of Hamtramck formed, with the rest of the township, a part of and belonged to a separate and distinct representative district, according to an apportionment and division which had been before regularly made and settled, and the period when an alteration would be admissible under the constitution had not occurred, and will not occur for some time to come.

It is now maintained by the relator that the constitution, not merely by implication, but in express terms, for-

bade this act of legislation, and he particularly relies upon *Art. IV.,* § *4,* which is as follows:

"The legislature shall provide by law for an enumeration of the inhabitants in the year one thousand eight hundred and fifty-four, and every ten years thereafter; and at the first session after each enumeration so made, and also at the first session after each enumeration by the authority of the United States, the legislature shall re-arrange the senate districts and apportion anew the representatives among the counties and districts according to the number of inhabitants, exclusive of persons of Indian descent who are not civilized, or are members of any tribe. *Each apportionment and the division into representative districts by any board of supervisors shall remain unaltered until the return of another enumeration.*"

The counsel for the defendant, admitting the strong bearing of this provision to sustain the position of the relator, ingeniously contended for some construction which would leave the legislature still at liberty to pass such a law as the present. We have considered this argument, but we cannot yield to it. The language of the constitution is so clear and the design so plain that we feel compelled to assent to the view taken by the relator.

The provision noticed was not casually inserted, and without attention to its possible scope. It falls in with others which help to show a settled purpose to organize electoral districts in a way most likely to secure unity of interest and convenience, and to shield them for fixed periods against change. The second section of the same article provides that the senate districts shall be single, and also that no county shall be divided to make a district unless equitably entitled to two or more senators. The third section requires that representative districts shall be single, and that each one shall contain as nearly as may be an equal number of inhabitants, exclusive of certain uncivilized persons; that it shall consist of convenient and contiguous territory, and that no township or city shall be

divided in the formation of a representative district, and these provisions are followed by that first quoted.

When we pass from these regulations to those which relate to elections, we find that the electors are only allowed to vote for representatives in their proper districts. They cannot be residents of one district, and at the same time be allowed to vote in some other; and a law which transfers them from one district to another by a change of city boundaries is as much an alteration of the district as it would be if the same result were brought about in a different way.

But it is said that the legislature in enlarging the city limits exercises a distinct power to accomplish an authorized end, and that the interference with the integrity of the representative district is something merely consequential and incidental, and that it was not intended to allow any such consequence to stand in the way of that power. The mandate of the constitution is against *any* alteration of a district, and not simply against one caused in some special manner. The injunction applies directly to the fact itself, however produced, and forbids it. The result being interdicted absolutely, it is scarcely admissible to say it may lawfully be brought about by indirection. When an act can only operate by violating a provision of the constitution, we may not seek to uphold it on the ground that the object contemplated by the legislature was different.

We have not been able to gather from the argument or from our own reflections on the subject any view of the constitution which would sanction this exercise of legislative power and not lead to insuperable difficulties and confusion. Any such construction would introduce a mass of incongruities which neither legislative nor judicial ability could reconcile or overcome.

We think the act in question and under which the defendant claims the right to hold the office of alderman in Detroit and to be a member of the common council, is

directly in conflict with the express provision of the constitution, and inconsistent with other features of that instrument.    If the point was less clear, the want of time to make a more elaborate examination of it would be much regretted.

Judgment of ouster must be entered against the defendant.

COOLEY and CAMPBELL, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.