| 81 | 123 |
|----|-----|
| 81 | 134 |
| 81 | 123 |
| 100 | 115 |
| 81 | 123 |
| 101 | 388 |
| 81 | 123 |
| 126 | 347 |
| 81 | 123 |
| f143 | ²534 |
| 81 | 123 |
| f153 | 675 |

JAY SMITH v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF 'SAGINAW.

*Constitutional law—Act consolidating the two Saginaws—Representative districts—Mandamus.*

1. It is not the policy. of the law to permit private individuals the use of the writ of *mandamus* against public officers, except in cases where they have some special interest, not possessed by the citizens generally; citing *People v. Inspectors,* 4 Mich. 187; *People v. Regents,* Id. 98; *People v. Green,* 29 Id. 121; *People v. Supervisors,* 38 Id. 421; *People v. State Auditors,* 42 Id. 422.

   So *held,* where a resident tax-payer applied for a *mandamus* to compel the mayor and common council of the city of Saginaw to rescind a resolution designating the places of registration and the places for holding the first election in said city under the consolidation act of 1889, on the ground of the unconstitutionality of said act.

2. An act of the Legislature consolidating two cities lying in separate representative districts into one municipality, which, by express provision, does not change the boundaries of the districts, or the manner of electing representatives therein, is not in violation of sections 3 and 4, Art. 4, of the Constitution, which provide for the division of the State into representative districts, to remain unaltered until the return of another State or National enumeration.

*Mandamus.* Submitted April 15, 1890. Denied June 6, 1890.

Relator applied for *mandamus* to determine the constitutionality of Act No. 455, Local Acts of 1889, con-

solidating the two Saginaws. The facts are stated in the opinion.

*Marston, Cowles & Jerome* (*Charles S. Smith*, of counsel), for relator.

*L. C. Holden* and *Frank E. Emerick* (*Hanchett, Stark & Hanchett* and *W. L. Webber*, of counsel), for respondents.

GRANT, J.    This is a proceeding by *mandamus* to determine the constitutionality of Act No. 455, Local Acts of 1889, consolidating the two cities of East Saginaw and Saginaw into one municipality.    The allegations in the petition are as follows:

1. That relator is a resident and tax-payer of Saginaw.

2. That the first representative district of Saginaw county is composed of the present city of Saginaw, and the townships of Carrollton and Zilwaukee, and the second district of the city of East Saginaw.

3. That the city of Saginaw is duly organized, with customary officers, elected in April, 1889, to hold for one year.

4, 5. That, in consequence of agitation in regard to consolidation of Saginaw and East Saginaw, a vote of tax-paying electors was taken in January, 1889, resulting in 957 against consolidation, and 44 in favor of it.

6. That the Legislature of 1889 passed Local Act No. 455, to consolidate the two cities.

7. That said act provided that the common councils of the two cities should, on or before the first Monday in February, 1890, designate places of registration and polling for an election of officers to be held under said act on the first Monday of March, 1890, to put said consolidated city government in operation, and that said common council of Saginaw has passed a resolution in accordance with said act, and intends to hold no election under the present charter of Saginaw.

8. That the boundaries of said consolidated city, as fixed by said act, do not include the townships of Carrollton and Zilwaukee, or either of them, and said act provides that it should not change in any respect the boundaries

of said first and second representative districts, or the manner of electing representatives therein.

9. That said act makes it the duty of the council of the consolidated city to build a city-hall on a site within certain boundaries therein fixed, and to keep all the city offices there, giving authority to issue $225,000 bonds for said purpose.

10. That said act divides the said consolidated city into two taxing districts, coterminous with the old cities, for purposes of sewers, care of streets, sidewalks, ditches, and water-works.

11. The debts of the old cities are by said act to be assessed upon said taxing districts respectively, save certain bonds of the old city of Saginaw, which are to be assumed and paid by the new city. Said provisions enumerated in the last three paragraphs are made fundamental conditions to said consolidation, and unchangeable, save in a way therein described

12. Said act number 455 is unconstitutional and void,—

"1. As being in violation of sections 3 and 4 of Article 4 of the Constitution of this State.

"2. That said act in imperatively requiring said consolidated city to issue its bonds, and to select and purchase a particular site, and erect a city-hall thereon, is unconstitutional and void, in that it violates the right of local self-government."

The answer denies the right of relator to maintain the petition, because the subject-matter affects all the people and public of the two Saginaws, and also the public of the State at large, and he has not applied to the Attorney General to institute proceedings, nor has the Attorney General refused to act in the premises, and because the respondents have no power to rescind the action complained of, and have no power or control over the officers in charge of the registration and election, and the object sought is not to set the respondents in motion, but to restrain and prevent their action, for which *mandamus* is not the appropriate remedy. The answer insists that the act is constitutional, and then replies to paragraph 5 of the petition, in the following language:

"These respondents say that the cities of Saginaw and East Saginaw are situated upon opposite sides of the Saginaw river. Between them, and leading from one to the other, are four railroad bridges, four highway bridges, and two lines of street cars. For many years, and nearly from the time of their incorporation as cities, they have been rivals, and their rivalry has retarded and obstructed the growth and prosperity of each. It has affected both the business and social relations of the people of the two cities, to their great annoyance, and to the derogation of the amenities and enjoyments of life in the two communities. It came to be seen that the way to overcome this unfortunate state of affairs was to make one city of the two, and thereby make it the common interest of all to promote the growth and prosperity of one corporation and one community. With this view, when the act of June 21, 1887, was passed, by which there was added to the city of Saginaw a small territory situated on the west bank of the river, and between the two cities, at the northern or lower portion of the city of Saginaw, and which was largely owned by residents of East Saginaw, who opposed the attaching of such territory to the city of Saginaw, the Legislature adopted in such act the provisions which were intended to point the way for and set in movement measures for the consolidation of the cities.

"Acting under the suggestion of these provisions, the common council of each city appointed a committee to draft a charter for the consolidated city, to be submitted to the Legislature. The result of the work of such committee was the preparation of a charter, which was wholly unsatisfactory to the people of the city of Saginaw, and after the same had been prepared the action was taken by the common council, by which the expression of the tax-paying electors was made on the 3d day of January, 1889. The vote was an expression on the proposed scheme of consolidation under such charter. and was not an expression of the tax-paying electors of the city on the subject of the policy or desirability of consolidation. Afterwards, committees of citizens from the two cities met and drafted a charter designed to provide for consolidation, and to remove the objections which were found to exist in the former draft. This draft was submitted to the Legislature, and became the act of June 28, 1889. The provisions relating to the location and construction of a city-hall, above referred to, were incor-

porated into the charter for the express purpose of meeting the wishes of the people of the city of Saginaw on the subject of those provisions. Six of the present twelve aldermen of the city, and the mayor of the city, were elected at the April election of 1889. Upon being informed of the service upon the mayor of the petition in this proceeding, the common council, as representative of the city, at a meeting of which eleven of the twelve aldermen composing the council were present, adopted resolutions, by a vote of ten for and one against, approving the act of consolidation. The alderman who was absent on the occasion of the adoption of the resolutions would have voted for their adoption had he been present."

1. It is evident that the relator has no special or specific interest in the issue here involved. He has only the interest which is common and general alike to all the inhabitants of the city, numbering many thousands. It is not, and never has been, the policy of the law to permit private individuals the use of the writ of *mandamus* against public officers, except in cases where they had some special interest, not possessed by the citizens generally. The rule laid down by Chief Justice Shaw *In re Wellington*, 16 Pick. 87, is cited with approval by this Court in *People v. Inspectors*, 4 Mich. 187, viz.:

"The general rule of law is that a private individual can apply for a writ of *mandamus* only in a case where he has some private or particular interest to be subserved, or some particular right to be preserved or protected, by the aid of this process, independent of that which he holds in common with the public at large; and it is for the public officers exclusively to apply, where public rights are to be subserved."

In *People v. Regents*, Id. 98, the relator had no interest other or different than that of any other citizen of the State, and the Court held that the action of the Attorney General was necessary. This is the established rule in this State. *People v. Green*, 29 Mich. 121; *People v. Supervisors*, 38 Id. 421; *People v. State Auditors*, 42 Id.

422. It is also the rule in other states. *Bobbett v. State,* 10 Kan. 9; *Turner v. Commissioners,* Id. 16; *Scripture v. Burns,* 59 Iowa, 70; *State v. Eberhardt,* 14 Neb. 201; *Heffner v. Com.,* 28 Penn. St. 108.

The result of this holding is to deny the writ, but, inasmuch as the question is one of public importance, and counsel for both parties desire us to determine it, we will express our opinion upon the merits.

2. Section 3, Art. 4, of the Constitution, provides for the division of the State into representative districts. Any city or town, containing a population which entitles it to more than one representative, shall elect by general ticket the number of representatives to which it is entitled. Each district shall contain, as near as may be, an equal number of inhabitants. Whenever any county is entitled to more than one representative, the board of supervisors are directed to divide the same into districts.

Section 4, Art. 4, requires the Legislature to provide for an enumeration every 10 years, and after each enumeration so made, and after each enumeration made by authority of the United States, to re-arrange the senate districts, and apportion anew the representatives among the counties. The division into representative districts, whenever made, must remain unaltered until the return of another enumeration.

It is insisted by relator that the act of consolidation of 1889 contravenes the above provisions of the Constitution, and *People v. Holihan,* 29 Mich. 116, is cited as being decisive of the question. The able counsel for relator assert that, "if *People v. Holihan* is law, this act cannot be sustained." We are unable to agree with them in this contention. In *People v. Holihan* the Legislature made no provision for preserving the integrity of the representative district from which the territory was detached, but, by the very terms of the act, the boundaries of two rep-

resentative districts were changed, the electors of one district transferred to another, and the preservation of the old district made impossible. Section 31 of title 16 of this act expressly provides that it—

"Shall not change, in any respect, the boundaries of the first and second representative districts of the county of Saginaw, as they exist prior to the passage of this act, and shall not change the manner of electing representatives in such districts."

Saginaw city and two townships comprised one district, and the city of East Saginaw the other. The voting precincts in the territory which comprised the old cities of Saginaw and East Saginaw are preserved intact in the new municipality. It is thus apparent that not only are the representative districts retained and preserved entire, but that no possible difficulty, doubt, or confusion can arise among the electors either as to time, place, manner, or right to vote, and no elector is or can be disfranchised. The difference between the two cases is so clear that it needs no argument to show that the Holihan case is not only not conclusive of the one at bar, but that the question here involved does not come within the reasoning of that case.

Nothing in the act is contrary to public policy, or operates as a denial or abridgement of any right guaranteed to the citizen. On the contrary, it appears from the answer, which must be taken as true, that it was for the interest of the inhabitants of the two cities that they be united under one municipal government. The power of the Legislature to consolidate two municipal corporations is not questioned. In a new and growing state, cases must often arise where it is for the interest of the people that territory lying in different representative districts should, for the purpose of local self-government, be comprised in one municipality. Yet, upon the relator's

81 MICH—9.

interpretation of the Constitution, this can only be accomplished, if at all, as often as an enumeration is made, and then only by the Legislature, which provides for redistricting. That the framers of the fundamental law of the State intended such a result is wholly improbable. The constitutional provisions are fully satisfied when the legislative districts are preserved intact, and the territories united for municipal purposes only, preserving to the electors the necessary provisions for electing their representatives. *Bay Co. v. Bullock*, 51 Mich. 544; *Stone v. City of Charlestown*, 114 Mass. 214; *Wade v. City of Richmond*, 18 Grat. 583; 33 Me. 587. By the act in question two municipalities are united, not divided, and in so doing the *status* and rights of their citizens, in all their relations to the State, are preserved, and the above provisions of the Constitution are not violated, either in letter or spirit.

3. By section 24, tit. 5, of said act, it was therein provided that the common council of said consolidated city was authorized to issue the bonds of said city to the amount of $225,000, to be in such amounts, payable at such times and places, and with such rates of interest, as the common council might determine, for the purpose of raising money to purchase a site for, and the construction of, a city-hall for said city, "which city-hall shall be located south of Atwater street, west of Franklin street, and east of the Saginaw river;" and that said bonds should be issued, and the proceeds thereof used, for no other purpose. And by said section it was further provided as follows:

"It is made the duty of said common council to proceed immediately to procure such site, and construct such city-hall, within said boundaries. All the offices of the city shall be located and kept, and all the said courts of the city shall be held, in such city-hall, when completed."

Section 30 of title 16 of the same act provides that the above provisions of section 24 shall not be abrogated or changed without the concurring assent first given of a majority vote of all the aldermen elected in each taxing district, by vote recorded at a meeting of the common council called for that purpose, of which due notice shall be given. It is insisted that the provisions of section 24 are unconstitutional and void, in that they violate the right of local self-government. We are not called upon to determine the constitutionality of these provisions, unless their unconstitutionality would render the whole act void; for the sole object of this proceeding is to test the validity of the entire act. Counsel for relator concede that the act should be sustained in its general features, if section 24 was unaffected by any other provision of the act, though, standing alone, it should be found unconstitutional. But section 30 further provides that—

"The construction of the city-hall within the limits herein provided for, and the issue of bonds therefor, are to be taken and construed as fundamental conditions of the nature of a contract between the two cities of East Saginaw and Saginaw,"—

Not to be abrogated except as above stated. And the argument is that the act would not have been passed but for this provision, and therefore the whole act falls. We can see no force in the argument. Courts will not declare an act of the Legislature void if, after the exclusion of the unconstitutional provisions, enough is left to constitute a valid enactment, and accomplish the purposes intended, nor under such circumstances will the presumption be entertained that the Legislature would not have passed the act. The common council may take no action under these provisions, or it may proceed as the act requires. In either event, the courts are open to the proper parties to compel or prevent their action. If

these provisions are striken out, the act still contains all the usual and necessary requirements and provisions for the complete equipment of a municipal government. And it appears from the two cases since brought to this Court (*Alderton v. Binder* and *Pistorius v. Stempel, post*, 133), and heard at the same time and in connection with this suit, that an election had been held under this act, and that the municipal government is fully organized and in full operation, with all the proper officers and municipal courts. There is as yet no certainty that the provisions will be carried out, for under the authority conferred the council may otherwise decide. No case is now presented calling for a decision upon this point, inasmuch as it does not affect the validity of the act.

4. It is also contended by the relator in his brief, though not in his petition, that the organization of two taxing districts, each co-extensive with the boundaries of the former city, for the assessment of taxes for sewers, paving, and other street improvements, sidewalks, ditches, and water-works, is unconstitutional. We see no objection to this provision. It seems equitable and just, and imposes no unequal taxation. It places the burden of taxation where it belongs,—upon those to be benefited. But, however that may be, it does not affect the validity of the charter.

5. Objection is also made that certain bonds issued by the former city of Saginaw, are made by the act of consolidation the debt of the new municipality. This cannot affect the interests of relator, and the citizens of the old city, otherwise than favorably, since it relieves them from bearing the entire burden. This debt was lawfully contracted. *Callam v. City of Saginaw*, 50 Mich. 7. And whether it affects the relator favorably or unfavorably is of no consequence, for it is well settled that territory added to a municipality is subject to the payment of

debts which have been before incurred. It can make no difference that in the case at bar it is called a consolidation of two municipalities. By the terms of the act the territory comprising the former city of East Saginaw was annexed to Saginaw city, and the new corporation named the " City of Saginaw."

The writ must be denied, with costs.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred. CAHILL, J., did not sit.