Williams, J.
1. The first question raised in the argument, is one of jurisdiction; it being, whether, since by sec *469 tion 1679 of the Revised Statutes, the council of a municipal corporation is made the judge of the election, returns and qualifications of its own members, the action of quo warranto, can, in any case, be employed to try the right of a person to a seat in that body. That section provides that “ The council, and when of two branches, each branch, shall be the judge of the election, returns, and qualifications of its own members.” The defendants contend, that the jurisdiction with which the municipal council, and its branches, is thus invested, is exclusive; and, that in the exercise of that jurisdiction, every question appertaining to the right to the office, may be determined ; and consequently, the court is without jurisdiction in this case, to inquire into the defendants’ title to the offices they claim to hold. The argument in support of this position is, that, as the language of the statute, by which the power is conferred on the councils of municipal corporations to judge of the election, returns and qualifications of their members, is identical with that of the constitution, which makes each house of the general assembly, the judge of the election, returns and qualifications of its members, the same rules of interpretation should be applied to the language in each case, and the powers conferred on the council, should be held to be equally comprehensive with those conferred on either branch of the general assembly.
It is well settled, that under constitutional provisions of the kind referred to, the decision of the legislative body upon the right of a member to a seat therein, is in general final and conclusive; and such decision may embrace the determination of every question affecting either the election, returns, or qualification of the member, whether there be a contest or not; for the power to judge of the election returns or qualification of the member, does not depend upon a contest instituted against him for the purpose of trying his title to the office. A more liberal rule of interpretation prevails, however, in favor of the powers of the legislature, than is applied with respect to those of councils of municipal corporations. The former is a co-ordinate branch of the state government, deriving its powers from the constitution, *470 and. is supreme in its department, subject only to tbe limitations found in tbe constitution; while the latter have only such powers as have been within such limitations expressly conferred on them by the former, or are clearly implied from those so expressly granted.
The statute under consideration, no doubt, was enacted in obedience to that requirement of the constitution which provides, that “ The general assembly shall, determine, by law, before what authority, and in what manner, the trial of contested elections shall be conducted.” Section 21, article II. In the light of this constitutional provision, section 1679 must be regarded as a designation by law, of the authority, before which, the trial of contested elections of members of the council of municipal corporations shall be conducted; and it confers upon such councils, complete power to hear and determine all questions arising upon a contest of the election of members thereof. The settled doctrine in this state is, that where provision is made by statute for contesting elections, the statutory proceeding is the exclusive remedy. State v. Marlow, 15 Ohio St. 114; Ingerson v. Berry, 14 Ohio St. 315. And in further recognition of this doctrine, in a recent decision, the court held, that the jurisdiction conferred by section 1679 upon the council of a municipal corporation to determine the election of its own members, is exclusive. State v. Berry, 47 Ohio St. 232. If, then, this action may be treated as a contest of the election of the defendants, as members of the council, and involves no inquiry which may not properly be determined upon such contest, in the decision of the question now under discussion, the defendants must prevail.
But is the action, in any proper sense, one of that character ? “ Elections cannot be held and offices acquired at the mere option of the office seeker. In order, therefore, to the holding of a valid election, authority so to hold it must be found conferred by the people, either directly through the constitution, which they have themselves ordained, or indirectly, through the enactments of their legal representatives, the legislature. Without such authority, no election, except *471 it be one held with the unanimous consent of all persons entitled to participate, can be of any legal importance.” Meacbam on Public Offices and Officers, section 170. In other words, there can be no election without some lawful authority for holding it. The phrases, “ contested election,” and “ contest of an election,” necessarily imply that an election under some lawful authority, has been held, to choose an incumbent of an existing office, to which some one, might, at such election properly be chosen, and that the person, whose right to office is the subject of the contest, claims to have been duly elected thereat. And, as said by Scott, J., in Ingerson v. Berry, 14 Ohio St. 324, the contest of an election, “ is the specific remedy provided by statute for the correction of all errors, frauds and mistakes which may occur in the process of ascertaining and declaring the true expression of the public will.” But where there is no such office as that which a claimant assumes to fill, or there is no authority for his election thereto, the attempt by him to exercise its functions, is a mere usurpation. In such case, a proceeding to contest his election, would be inapplicable, and inappropriate; and, if the public exigencies demand it, he may, we think, be ousted by quo warranto. The distinction drawn by the Supreme Court of Pennsjdvania, in the decision of two reported cases arising under constitutional and statutory provisions somewhat analogous to ours, is in accord with this conclusion.
The charter act of the city of Philadelphia conferred upon its council the same power and mode of trying contested elections of its members as. is provided for the contest of elections of members of the senate and house of representatives. In The Commonwealth v. Leech, 44 Pa. St. 332, which was a proceeding in quo warranto, to oust from the office a member of the council of that city, the court held that “ where there are two claimants under the same election for the same office, which only one of them can have, it constitutes a case of contested election, which is to be tried in the mode specifically provided for in such cases, and not by the ordinary form of judicial process, the statutory remedy *472 for this statutory right, supplying the place of the common law remedy. The mode of trying contested elections of councilmen of Philadelphia, is specially provided for in the city charter of 1854; and in such contests the courts have no jurisdiction.” In a succeeding case, the Commonwealth v. Meeser, 44 Pa. St. 341, which was a proceeding to oust from the office of councilman in the city of Philadelphia, a person claiming to be such officer, on the ground that the ward which he claimed to represent already had one member, and was not entitled to two, that' court, in holding that quo warranto was the proper remedy, uses the following language: “The supreme court cannot inquire whether the election was regularly conducted; for that duty belongs to the branch of the council in which the seat is claimed; but they can decide the question whether there was an office or vacancy to be filled.” In the opinion of the court, Lowree, C. J., said: “ This ward has already one member, and is not entitled to another unless it had four thousand taxable inhabitants. Here, then, are the regular steps to a valid election: an official list of taxables of the preceding year, showing four thousand taxable inhabitants; a proclamation of the sheriff of a vacancy to be filled, which proclamation is expressly required, and an actual election in pursuance thereof, conducted by the proper officers, and certified as the law directs. If any of these steps are wanting, then the election was irregular, and the defendant’s title to the office is at least doubtful. But let us be careful here. This court has no authority £o judge whether the election was regularly conducted or not, for that duty is assigned by law to the councils. Our duty must be confined to the decision of the question whether there was an office or vacancy to be filled.”
In the case of Commonwealth v. Fowler, 10 Mass. 290, it appeared that on the 25th of February, 1812, the legislature of Massachusetts passed an act, which, by its provision, was to take effect from and after the first day of August then next, and which created the county of Hampden out of certain towns in the county of Hampshire. On the 20th of May, 1812, the governor appointed the respondent Fowler *473 to the office of judge of the probate of wills, in the county of Hampden. An information in quo warranto was filed to oust him, on the ground that at the time of the appointment the law was not in operation, and the appointment was on that account void. It was contended that the court was without jurisdiction by that proceeding to inquire into the respondent’s right to the office, because the governor had the exclusive right of appointing and so must have the exclusive right of determining when a vacancy existed in the office, the filling of which belonged to that branch of the government. It was also contended that the appointment was valid. But the court held otherwise on both questions, deciding that it had jurisdiction, and that the appointment, by the governor, of the respondent to the office, before the act went into effect was void. And see Att’y Gen’l v. Holihan, 29 Mich. 116; People v. Riordan, 41 N. W. Rep. 482; People v. Gartland, 42 N. W. Rep. 687; Commonwealth v. Allen, Huhn and Shane, 70 Pa. St. 465.
The distinction between the trial of a contested election, which is a contest between two or more persons for the same office, or against one claiming the office, and implies that there was an election held under some lawful authority for choosing an incumbent of an office then in existence, which some one might lawfully fill, and an inquiry into the legal existence of the office, or the authority to hold an election or make an appointment to fill it, is clear and substantial, and was practically enforced in the cases of State v. Marlow, 15 Ohio St. 114, and State v. Taylor, Ibid. 137.
While, therefore, the power conferred by section 1679 of the Revised Statutes on the councils of municipal corporations, to determine the election of their own members, is exclusive, we are of opinion, quo warranto may be maintained against a person who assumes the exercise of the office of member of the council from a ward which has no legal existence, or under an election held without authority of law.
If the act referred to in the petition, did not go into effect, as a law, until after the 26th day of March, 1890, there was no authority for the appointment, that day made, by the *474 mayor, of the commission to re-district the city of Springfield, and the appointment, and the acts of the commission, were equally inoperative and invalid; and it follows, that at the April election of 1890, there were no such wards as those in which the defendants claim to have been elected, and there could then be no election of members of council therein.
2. This brings us to the consideration of the other question in the case, which is, when did the act take effect ?
It is shown by the petition, that the bill, which finally became the act in question,was introduced in the house of representatives, and after having received, on its passage, the votes of a majority of the members elected to that body, was sent to the senate, where it was amended, and as amended, received the votes of a majority of the members elected to the senate, and was then returned to the house for its concurrence in the amendments. The house refused to concur; and, on the 26th day of. March, 1890, the senate receded from its amendments, and sent its message to the house, to that effect, on the 27th of March, 1890; and on the 81st day of March, the bill, having been enrolled and reported to the house by the committee on enrollment, was signed by the speaker and sent to the senate, where, on the 1st day of April, it was signed by the presiding officer of the senate, who, as required by the joint rules of both houses, affixed thereto the date of the passage of the bill as follows: “ Passed April 1st, 1890.” And thereupon, the petition alleges, the. bill became a law under the title it now bears, and as such was deposited in the office of the secretary of state.
Section 17 of article II. of the constitution requires, that “ The presiding officer of each house shall sign, publicly in the presence of the house over which he presides, while the same is in session, and capable of transacting business, all bills and joint resolutions passed by the general assembly.” To carry out this constitutional provision, the general assembly adopted the following joint rule:
“ Each bill and joint resolution shall be first signed by the speaker of the house of representatives, and then by the president of the senate, who shall fix the date thereto, and be by *475 him delivered to the clerk of the senate, who shall immediately deposit the same in the office of the secretary of state, and take his receipt therefor, which receipt shall be fifed with the papers of the senate.” — Joint Rule 17.
By section 128 of the Revised Statutes, the secretary of state is required to have charge of and safely keep all laws passed by the general assembly, and deposited in his office.
Evidently, the framers of the constitution, and the general assembly, deemed it important that there should be some rule, by which it might be ascertained, with certainty and convenience, when a bill became a law. The evidence of the proceedings of each house of the general assembly, is contained in the journal it is required to keep; and that would be a rule of great inconvenience, which should require an examination of those journals in every instance, in order to determine when a bill finally received the requisite vote of both houses. And then, the result might not always be certain; for it would hardly do to hold that a bill becomes a law the instant it receives the votes of the majority of the members of each house. The vote may thereafter be re-considered, and the measure then defeated, and no one would claim, we apprehend, that during the interval between these events, it would be a law. In the practical execution of the provision of the constitution, and the joint rule, already quoted, the president of the senate, when he signs the bill in the presence of that body, affixes the day of the month, and the year, preceded by the word “passed,”, and the act thus authenticated, with that date of its passage appended, is deposited in the office of the secretary of state, and is so published in the volumes of the laws of that session. This appears to have been the long and uniform practice, and the laws are administered by the courts, with reference to the dates of their passage thus shown. And in subsequent legislation, when the time of the passage of a previous act is referred to, it is uniformly referred to, as passed at the date affixed by the president of the senate and published in the laws. This may be regarded as a legislative interpretation of the meaning of the term “passage,” when used with reference to the time when an act shall take *476 effect; and hence, when it is provided in a statute that it shall take effect from and after its passage, the time of the passage of the act as affixed by the president of the senate, when he signs the same, is intended.
In the recent case of State v. Kiesewetter, 45 Ohio St. 254, it was held that a bill which is not authenticated as required by section 17 of article II. of the constitution, does not become a law; that this provision of the constitution is mandatory, not directory only, and was intended, not as a mere guide to the action of the general assembly, but for the benefit of the people in their examination in ascertaining what is or is not the law.
For the reasons there stated, and those here given, we are of opinion, the act in question did not go into effect until the 1st day of April, 1890 ; and consequently, the action of the mayor of Springfield in appointing the commission to re-district that city into wards, and the action of the commission so appointed, were alike unauthorized and void. The persons appointed on the so called commission were not officers de faeto, for there was then no such office. There can be no officer de faeto, unless there be an office to fill. And as is said by a learned author, while there may be officers defacto, an office defacto cannot exist under a constitutional government. Meacham on Public Offices, section 825. Neither, are the defendants, officers de facto. The action of the so-called commission being wholly ineffectual to establish the wards which the defendants claim they were elected to represent, there was of course no such office as member of the council from the supposed wards ; and, as there was no office, there could be no defacto officer. In this essential feature, the status of the defendants, as well as of the persons appointed on the re-districting commission, lacks analogy to that of the contesting senators, whose action, after they were admitted as members of that body, was under consideration in the case of The State ex rel. Herron v. Smith, 44 Ohio St. 349, referred to in the argument of counsel. The senatorial districts were lawfully established; and, at the time and in the manner appointed by law, an election had *477 been held, at which senators were duly chosen. The contestants, who claimed to have been elected from their respective districts, were admitted to seats in, and thereafter acted as members of the senate. There can be no doubt, that while so acting, they were, as was held in that case, at least senators defacto.
The demurrer is overruled. And, as it is impossible that the law could have been so executed as to effect a redistricting of the city into wards between the time the act took effect, and the election held on the 7th day of April last, no reason is perceived why final judgment of ouster should not now be pronounced against defendants, and

Judgment will be entered accordingly.