JAMES H. WINDSOR, Apppellant, v. POLK COUNTY, *et al.*

**Mandamus:** WHO MAY MAINTAIN. Under Code, section 4345, providing that the order of mandamus shall be granted on the petition of any private party aggrieved, without the concurrence of the prosecutor for the state, or on the petition of the state by the county attorney, when the public interest is concerned, an individual who who was one of the required number of signers of a petition asking the board of supervisors to submit to the electors the question of rescinding the authority for the erection of a court house, is entitled to maintain mandamus to compel the board to perform that duty.

**NON-PERFORMANCE OF OFFICIAL DUTY:** *Evidence.* A sufficient petition requesting the board of supervisors to submit to the electors a proposition to rescind a tax for the erection of a court house was filed with the county auditor who acted as clerk of the board when in session, but whose duty did not require him to receive such petitions, or present them to the board. Individual members of the board examined it while in the auditor's office, and at a subsequent meeting, one of the members inquired of the auditor if such a petition was on file, and was told there was. One of the petitioners attended the meeting of the board, and during the meeting called the chairman to one side and asked that the petition be considered, but did not address the board or take the petition from the auditor. On the written request of the petitioners the board granted permission to withdraw the petition which was done and mandamus was brought against the board to compel a submission of the proposition to the public. *Held,* that the petition had never been presented to the board, and under Code, section 452, directing the board to submit the question of adoption or rescission of such measures "when petitioned therefor," the board had not refused to perform a duty.

*Same.* On a mandamus to compel the board of supervisors to submit to the electors a certain proposition contained in a petition alleged to have been presented to the board, evidence of an agreement between the board members that an adjournment should be taken on the mention of the petition was immaterial, where the petition was not presented, and its presentation was not prevented by the agreement.

**Court House Tax:** RESCISSION. Though Code section 51 prescribing that propositions adopted by a vote of the electors and local regulations thus established may be rescinded in a like manner by a subsequent vote taken thereon, was enacted before the act (section 423) authorizing the levy of a tax by popular vote for the erection of court houses, it refers to the latter, both having been subsequently reenacted together; and a tax levied for such purpose may be rescinded by vote of the electors.

*Appeal from Polk District Court.*—HON. CHARLES A. BISHOP, Judge.

THURSDAY, OCTOBER 17, 1901.

AT the general election of 1898 the following proposition was submitted to and voted for by a majority of the electors of Polk county: "Shall a new court house be erected in Des Moines, Iowa, to cost not exceeding $400,000, and shall the board of supervisors borrow money for the erection thereof, and issue bonds of Polk county for such indebtedness, and shall the board of supervisors, commencing with the year 1899, and for a period not exceeding 20 years, levy, in addition to the usual taxes levied by them, an annual tax not exceeding one and a half mills on the dollar of the assessed valuation of said county, for the purpose of paying principal and interest on said bonds?" On the 6th day of October, 1899, A. B. McGrew, Paul Kraetsch, and W. T. Shaver filed with the county auditor a petition purporting to be signed by one-fourth of the legal voters of said county, addressed to the board of supervisors, asking that body to submit to the voters of Polk county at an election the question of the rescission of the adoption of the above proposi-

tion. This is an action in mandamus to compel the board of supervisors to act on said petition. Judgment for defendants, and both parties appeal; that of plaintiff being first perfectly.—*Affirmed.*

*Cummins, Hewitt & Wright, Read & Read,* and *A. P. Chamberlain* for appellant.

*John J. Holloran, Bowen, Brockett & Alberson* and *Thos. A. Cheshire* for appellees.

LADD, J.—The plaintiff is an elector and taxpayer of Polk county. He signed the petition addressed to the board of supervisors asking that the question of the recission of the proposition for the erection of a court house, previously carried, be submitted to the voters. Had he such interest that he might prosecute this action in mandamus to compel the board to act on that petition? Mandamus is no longer to be regarded as a prerogative writ, but rather to be treated as one of right, to be demanded in a civil action. *Brown v. Crego,* 29 Iowa, 321. Some diversity of opinion exists with respect to the procedure when not regulated by statute, but there is, as declared in *Union Pac. R. Co. v. Hall.* 91 U. S. 343 (23 L. Ed. 428), "a decided preponderance of American authority in favor of the doctrine that private persons may move for a mandamus to enforce a public duty not due to the government as such without the intervention of the government law officer." See cases collected in 13 Enc. Pl. & Prac. 630 *et seq.* Generally, the practice is regulated by statute, and section 4345 of the Code appears to be sufficiently explicit: "The order of mandamus is granted on the petition of any private party aggrieved, without the concurrence of the prosecutor for the state, or the petition of the state by the county attorney, when the public interest is concerned, and is in the name of such private party or of the state, as the case may be in fact brought." From this it clearly appears that, unless "the

public interest is concerned," the writ will not issue on the petition of the state, and it is quite as clear that a private person must show himself to have been "aggrieved" before the order can be obtained. But when both these conditions appear, by whom shall the petition be presented? The appellees insist that in such a case only the public officer may petition, and in the name of the state. The statute, however, contains no such limitation. It is explicit in authorizing the maintenance of the action by "any private party aggrieved," and this may be done even though public interests are somewhat concerned. In other words, private rights may be vindicated notwithstanding public interests, for which ample protection is afforded, may be involved. Any doubt on this point is dissipated by the section following, which reads: "The plaintiff in such action shall state his claim, and shall also state facts sufficient to constitute a cause for such claim, and shall also set forth that the plaintiff if a private individual, is personally interested therein, and that he sustains and may sustain damage by the non-performance of such duties, and that performance thereof has been demanded by him, and refused or neglected, and shall pray an order of mandamus commanding the defendant to fulfill such duty." Section 4346, Code. The question as to whether an action may be thus maintained to enforce a duty owing the government as such is not before us, and upon that point no opinion is expressed. Undoubtedly, an individual, to maintain the action, must exhibit an interest independent of that which he holds in common with the public at large. *Weeks v. Smith,* 81 Me. 538, (18 Atl. Rep. 325); *People v. Inspectors, etc., of State Prison,* 4 Mich. 187; *Heffner v. Com.,* 28 Pa. St. 108; *Adkins v. Doolen,* 23 Kan. 659; *Linden v. Board,* 45 Cal. 6; *Territory v. Cole,* 3 Dak. 301, (19 N. W. Rep. 418). Here the plaintiff is shown to have been one of those who signed the petition asking the board of supervisors to submit the question of rescinding the original proposition to a vote of the electors. The statute gave him the right to thus petition

that body. The law in this country has always regarded the right of petition as sacred and valuable. It is treated as one of the safeguards of the rights of property and citizenship as well. If the board unlawfully refused to him, when joined by the lawful number of petitioners, the relief expressly given by the statute,—i. e. an order submitting the question of rescission to a vote of the electors,—it invaded his clear legal right of having effect given to the petition; and, if it cannot be compelled by mandamus to discharge its duties under such circumstances, the petitioners are left without a remedy for the enforcement of this right. From its very nature the petitioners can have no pecuniary interest in this matter, save in common with the taxpayers of the county; but, as the law confers the right to an order submitting the proposition to an election, it cannot be said not to recognize in them an interest in its enforcement. It is not contemplated that they be left without a remedy or with a remedy depending solely upon the will of the county attorney. In such contests the county attorney is often a partisan, and those adversely interested ought not to be compelled to have their cause managed or directed by an officer opposed to the results aimed at. Since the statute gives the requisite number of voters the right to demand the submission of the question to the decision of the electors of the county, any one or more of the petitioners are entitled to a writ, if necessary to compel the entry of the order by the board. *Kimberly v. Morris*, 87 Tex. 637, (31 S. W. Rep. 808); *Simpson v. Osborn*, 52 Kan. 328, (34 Pac. Rep. 747.

II. The appellees contend the statute does not contemplate the submission to the electors of the question of the rescission of a proposition to erect a court house at a cost exceeding $5,000. Section 451 of the Code reads: "Propositions thus adopted, and local regulations thus established, may be rescinded in like manner and upon like notice by a subsequent vote taken thereon, but neither contracts made under them, nor the taxes appointed for carrying them into effect, can be rescinded."

Evidently "propositions thus adopted" refers to those previously mentioned in the same chapter as voted by the electors of the county. True, the above section, with others relating to the submission of certain questions to the people for decision, have stood since the Code of 1851, while that relating to the submission of a proposition for the erection of a court house and some other structures first appeared in the Revision of 1860. But this furnishes no reason for not bringing the latter within the purview of the statute quoted, when evidently so intended by the general assembly in enacting the Code of 1897. No question can be made but that the proposition for a tax should be included, and we think it clearly refers to that for court houses, jails, and other buildings as well.

III.    The district court held that which was done by these signing the petition for the rescission of the proposition for the erection of a court house, carried at a previous election, did not constitute a petitioning of the board of supervisors. The object of this action is "to obtain an order commanding the board of supervisors" to do "an act the performance * * * of which the law enjoins as a duty." Section 4341, Code. Before a duty was involved, the board must have been called upon in some way to act, either by positive requirement of law or the demand of some one interested. It is not to be presumed in any case that an official body will purposely refuse or neglect a duty exacted by the law, and, until the opportunity to act has been afforded, and omission shown, indicating that without the intervention of the court the duty will not be performed no order should issue; in other words, the necessity therefor must be first shown. For this reason our statute requires that the petition in an action by a private individual allege "that performance thereof has been demanded by him, and refused or neglected." Section 4346, Code. Section 452 of the Code directs that "the board shall submit the question of the adoption or rescission of such a measure when petitioned therefor by one-fourth of the voters of the county unless a

different number be prescribed by law in any special case."
To "petition," according to Webster's Dictionary, means
"to make a prayer or request to; to ask from; to solicit; to
entreat; especially to make a formal written supplication
or application as to any branch of the government." The
evident intention of this statute is that written application or
request be made of the board of supervisors as a body by the
proper number of electors. It is not enough that individual
members be importuned separately, or merely informed of
the purpose of the petitioners. The application, according
to the statute, is to be made to the board as an organized
body, sitting as the board of supervisors of the county. Was
this done? It appears that McGrew and another deposited
the petition—which may be assumed to have been sufficient
—with the county auditor October 6, 1899, and that it was
indorsed by him as filed. But this was wholly unauthorized
by the Code. It does not make him the custodian of such
applications, at least before their presentation. He is not
the agent of the board of supervisors (*Polk v. Foster,* 71
Iowa, 26), but an independent officer, most of whose duties
are entirely disconnected with those of that body. True, he
acts as their clerk when in session, but the duties to be per-
formed by him as such and independently are well defined,
and nowhere is he, either while acting as clerk of the board
or independently as auditor, required to receive or file such
applications, or to present them to the board when filed; nor
is it exacted of the board to take any notice of documents of
this character, save when properly presented. Aside from
the mere matter of accessibility, it might as well have been
filed with the treasurer or recorder. Nor would any pur-
pose be served by such a filing. No notice or action prelim-
inary to the presentation of such a petition is required, and
hence there is no occasion for depositing it with any officer
prior to bringing it to the attention of the board of supervis-
ors. It is not material that individual members examined
it while in the auditor's office. This merely advised them of
its existence, unless they already knew, and of its character.

They were not bound to assume it to have been placed there for their inspection more than for that of other citizens of the county. Any number of petitions may have existed, which, until presented, were of no concern to the board of supervisors. At a subsequent session one of the members inquired of the auditor if a petition was on file, to which the auditor responded in the affirmative; but the board, having disposed of all business before it, immediately adjourned. This inquiry indicated no more than knowledge of its existence and location. No request was made for action, and the petition had never been brought before the board by any one. On the 21st day of April, 1900, McGrew and two others "made written application for themselves and other citizens whose names appear thereon for the withdrawal of the petition filed with the county auditor October 6, 1899, asking for a rescission of the court house proposition, adopted by the voters of Polk county at the general election of 1898." The request was granted by the board, and the petition delivered by the auditor to Shaver, who retained it until the trial in January, 1901. Withdrawing a petition cannot be construed to be a presentation thereof. The application to do so amounted to a request not to act, rather than to make the appropriate order of submission. The auditor had the perfect right to return the petition without the permission of the board, and the action added nothing to his authority. True, the circumstances advised the board of the existence and whereabouts of the petition. That was already known, and, as previously remarked, it was not bound to act until called upon in some way to do so. Again, McGrew testified to being at the court house during a session some time between the October meeting mentioned and April, 1900. He beckoned the chairman aside to the railing, and asked "whether he was going to fetch up that petition for rescission at this meeting," and said he "was very anxious to have it acted on, and get it before the people." The chairman (Teachout) replied that they had a good deal of work to do, but they would try and get it up that day. McGrew

further testified: "I called Teachout to me at the railing, and he came through the gate, and there we stood. The gate I speak of was in the railing between the space for the board and space for outsiders, Mr. Teachout was presiding. I beckoned to him, and he came right out by the railing, through the gate. I did not whisper to him. I told him I wanted him to fetch up this petition at this meeting of the board. I was a little excited that he would not let me file it before, and hold over the meeting. I told him I meant business, and I wanted him to act on it immediately. The reason I did not address him as chairman, and address all the members of the board was that I supposed that if I would talk to the chairman of the board that that would be sufficient. What I said to the chairman was not said privately It was just the same as if I had 'hollered.' You could have heard me at the post office. I talked natural. I am a loud talker anyhow. I can't talk any other way. I talked as loud as I am talking now. The other members could hear if they wanted to. They were there, sitting in their chairs. They were not transacting business, because I had called Mr. Teachout from the chair. They were sitting around there the same as they are sitting here now. I did not have the petition. It was in Mr. McQuiston's hands. I did not have it because I had filed it. I did not see the petition there. That was why I was urging the thing up. I was talking with Mr. Teachout. I called him to the railing. He did not come through the gate." Possibly other members of the board overheard the conversation between the chairman and McGrew, but it was not addressed to them, and they were under no obligation to give it the slightest attention. Nothing said justified the inference that he was then presenting a petition to the board as a body, or demanding of it action thereon. Indeed, the witness does not pretend to have talked to the board of supervisors, but expressly states that his conversation was with Teachout, as he deemed it sufficient to call his attention, as chairman, alone, to the matter. The petition was not there. The law did not require the officers

to find it. Nothing was requested or demanded of the board of supervisors of Polk county as such, and without this no duty devolved upon it to act. Mere notice that there was such a petition, or knowledge of its contents, was not enough. The board must have been called upon in some way to act before it can be said to have been remiss in the performance of its duties. As contended, no particular mode or ceremony is prescribed for the presentation of such an application. This may be accomplished in an entirely informal way. *State v. Marshall County Judge,* 7 Iowa, 186. But that it must be presented to the board of supervisors, as such, in some manner, is expressly exacted by the statute quoted. The petitioners had the right to bring their application before the board in their own good time, and it was not for that body to assume this to have been done, in the absence of the petition, and of any written or oral request for its action. As the record before us fails to show that the board was ever called upon to act on it, the petition was properly excluded from the evidence.

IV. Complaint is made of the court's refusal to receive proof that certain members of the board of supervisors had agreed that upon the mention of the petition for rescision an adjournment should be taken. Such an understanding, if had, was entirely immaterial to this controversy, unless it prevented the presentation of the petition. The only time such a thing was proposed was the day before it was left with the auditor. At that time all the business before the board had been disposed of, and adjournment amounted to a refusal to continue in session thereafter long enough to enable McGrew to procure the petition from across the river, and present it. The propriety of an adjournment under such circumstances was purely discretionary with the board, and the existence of the understanding claimed was wholly immaterial. *Butterfield v. Treichler,* 113 Iowa, 328.

Other rulings on the admissibility of evidence are settled by what has been said. The motion to strike the additional ab-

stract containing the opinion of the judge in deciding the case is overruled. See *Williams v. Tschantz,* 88 Iowa, 126; *Mc-Lean v. Ficke,* 94 Iowa, 283; *Mellerup v. Insurance Co.,* 95 Iowa, 317.—Affirmed.