# JUNE TERM, 1877.

---

## The People on the relation of The Attorney General v. Henry H. Bradley.

*Legislative authority: Boundaries of representative districts: Supervisors.* The legislature has authority, except as prohibited by the restrictions of the constitution (*Art. IV.*, § *4*), to change the boundaries of representative districts, and this power is not lodged exclusively with the supervisors.

*Representative districts: Change of boundaries: Constitutional restriction: New enumeration.* The constitutional requirement that each apportionment and the division into representative districts, etc., shall remain unaltered until the return of another enumeration (*Art. IV.*, § *4*), does not preclude the legislature, at its first session after a new enumeration, from enlarging the boundaries of a city so as to take in territory before belonging to another representative district, though the new apportionment has not yet been actually made.

*Constitutional law: Titles of statutes: Defining boundaries: Cities.* It is competent in an act the title of which expresses the idea of defining and making distinct the boundaries of a city, to provide for enlarging and extending the city limits so as to take in new territory; the word "define," as applied to territorial limits, in its broadest sense, means something more than to determine boundaries already established; and the constitutional limitation, requiring the object of the law to be expressed in the title, was not designed to confine the legislature to the use of words in their most restricted sense in the titles of acts.

*Heard April 4 and 5. Decided June 6.*

Information in the nature of a Quo Warranto.

*S. M. Porter, D. P. Foote* and *B. Hanchett,* for relator.

*B. M. Thompson* and *T. E. Tarsney,* for respondent.

MARSTON, J:

The attorney general filed an information against the respondent, charging him with intruding into, usurping and wrongfully holding and exercising the office of alderman of the eighth ward in the city of East Saginaw.

That the respondent was in fact elected, and that he qualified and entered upon the discharge of his official duties, is admitted. The real controversy grows out of certain legislation annexing South Saginaw with the city of East Saginaw, and it is claimed and set forth that all such legislation was and is in conflict with § 4, Art. IV. of the constitution, in that it attempted to transfer a portion of the third representative district of the county of Saginaw into the second.

The respondent in his plea to the information sets forth, that an enumeration of the inhabitants of the state was regularly made in the year 1874, and an apportionment of representatives was made by the legislature in the year 1875, by which apportionment the county of Saginaw was entitled to three representatives; that in the month of October, 1875, the board of supervisors of the county of Saginaw divided said county anew into representative districts; that by such division the city of East Saginaw was constituted the second, which division included the eighth ward of said city in said second district, and that on the 3d day of April, 1876, the respondent was elected, etc. These facts were admitted by a demurrer to the plea.

We need not specifically examine nor pass upon the constitutionality of the several acts of the legislature annexing South Saginaw to East Saginaw, and which it is claimed were unconstitutional within the ruling made in *Attorney General v. Holihan, 29 Mich., 116.* While under those acts the disputed territory was in fact within the corporate limits of the latter city, a new enumeration of the inhabitants of the state was made in 1874, and the legislature at its first session thereafter apportioned anew the representatives among the counties, in accordance with § 4 of the constitution, already referred to. At the same session of the legislature an act was passed entitled "An act to define the boundaries of the city of East Saginaw and the several wards and election districts thereof." This act was ordered to take immediate effect, and was approved April 22, 1875.

PEOPLE *v.* BRADLEY.

It provided that the boundaries should be and remain as the same had been established by act number 255 of the second volume of the laws of 1873, and that the city should be divided into eight wards, and that the boundaries thereof should continue and remain as particularly described in section two of said last named act. Passing for the present the objection urged against the validity of the act of April 22, 1875, viz.: that the title does not correctly indicate the purpose of the law, we will notice some of the other objections presented.

Counsel for the relator insisted "that the legislature has never power to change the boundaries of representative districts; that this power is solely to be exercised by the board of supervisors" under the constitution and laws of this state. And secondly, that even if the legislature did have such power, it could only make the change after a new apportionment had been made; that the new apportionment was not made until May 3, 1875, while the act in question was approved April 22, 1875.

We are of opinion that these objections are not well taken. That the legislature clearly has the power to make such changes, unless prohibited by the constitution, cannot be successfully controverted. The only constitutional provision relating to this subject is the last clause of § *4 of Art. IV.,* which is as follows: "Each apportionment, and the division into representative districts by any board of supervisors, shall remain unaltered until the return of another enumeration."

To enlarge the boundaries of a city, by annexing to it parts of adjoining townships, in such a manner as to interfere with the boundaries of representative districts at a time when such alteration is forbidden, was, in *Attorney General v. Holihan,* held to be a violation of this provision; that the regulations relating to electors only allowed them to vote for representatives in their proper districts, and that they could not be residents of one district and be permitted to vote in some other.

36 MICH.—57.

The time, however, within which such changes are forbidden, is after an apportionment and division into representative districts has been made, and "until the return of another enumeration." Upon the return of another enumeration, it becomes the constitutional duty of the legislature, at its first session thereafter, to apportion anew the representatives among the counties and districts according to the number of inhabitants; and it is equally the duty of the board of supervisors at their annual meeting, next after such apportionment, to divide their respective counties into representative districts; and they are prohibited from dividing any township or city, in the formation of a representative district.

After the return of an enumeration has been made, the legislature may well anticipate the apportionment which it is to make in accordance with this constitutional provision, and it may rightfully assume that the supervisors will perform their clear duty, at the time and in the manner pointed out, and it will be justified in acting upon this assumption. The legislature need not wait, after the return of an enumeration, until a new apportionment has actually been made, before enlarging the boundaries of a city, by annexing thereto territory then belonging to another representative district. In making such change in this manner, there is neither a violation of the constitutional provision quoted, nor of the regulations relating to electors voting for representatives in the district in which they reside. The new enumeration satisfies the constitutional provision, and before another election for representatives can take place, a new apportionment and division is made, which removes the other objections.

If the change could not be made at this time and in this way, when could it be made? If the supervisors alone have power to change the boundaries of representative districts, then the particular change sought for in this case never could have been made. We must take judicial notice of the time when the legislature is required to assemble at

PEOPLE v. BRADLEY.

the seat of government, and we may fairly presume that the final adjournment will take place before the month of October following. The new apportionment may be made so late in the session that sufficient time might not remain after the time for final adjournment had been agreed upon, to pass any acts changing the boundaries of representative districts in this way. The supervisors, meeting in the following October to divide their respective counties according to the new apportionment, could place a city or village, with the territory adjoining, in the same representative district, but they could not divide any township in so doing, as such division is expressly prohibited by the constitution. And after the supervisors have formed the districts, the legislature would then be powerless in the premises until after another enumeration and apportionment had been made, even if it could then act, according to the argument advanced by counsel for the relator.

A more reasonable and practical construction must be given this provision,—one that will not take the entire control of the change in the boundaries of cities from the legislature, or leave that body at the mercy of the boards of supervisors, and that will at the same time preserve intact the constitutional provision both in letter and spirit.

We are clearly of opinion that the legislature did, in April, 1875, have full power and authority to annex a portion or all of South Saginaw to East Saginaw, even although by so doing it interfered with and changed the boundaries of representative districts as then formed.

We now come to consider the last objection urged against the act of April 22, 1875, viz.: that the object of the act is not indicated by its title. The objection is, that the title simply expresses the idea of defining or making distinct the boundaries of the city and its wards; that the word "define" does not indicate an intention to enlarge or extend, but merely to make clear and certain what was before then uncertain, ambiguous or indefinite; while the real object of the act is to put into the city a large extent of territory

then lying entirely outside of it. It was not claimed, nor could it be successfully, that the title should have expressly stated that certain territory would be detached from the township of Spaulding and annexed to East Saginaw, but that the title should at least have indicated that the limits or boundaries of East Saginaw were to be enlarged or extended.

While the word "define" may be, and frequently is, used in the sense and for the purpose claimed, and while we might concede such to be the general and more popular use of the word, yet it is not used exclusively in such a sense. It has a broader and different meaning. It is frequently used in the titles of acts, and but seldom in the narrower sense, or as merely defining powers previously given. An examination of our session laws will show that acts have frequently been passed, the constitutionality of which have never been questioned, where the powers and duties conferred could not be considered as merely explaining, or making more clear those previously conferred or attempted to be, although the word "define" was used in the title. In legislation it is frequently used in the creation, enlarging and extending the powers and duties of boards and officers, in defining certain offenses and providing punishment for the same, and thus enlarging and extending the scope of the criminal law. And it is properly used in the title where the object of the act is to determine or fix boundaries, more especially where a dispute has arisen concerning them. It is used between different governments, as, "to define the extent of a kingdom or country." Indeed, it is a word of very frequent and general use, and although even the settlement of a disputed boundary must necessarily and inevitably extend the line and take in new or additional territory, within the understanding of one of the claimants, we have never heard of any question being made as to the want of authority to enlarge the possessions of another under a power given to define them.

If the word used by the legislature can in any of its vari-

ous uses or meanings be considered appropriate or applicable, then we cannot say that they did not have a right to use it in that sense, even although we might be of opinion that a better and more appropriate one might have been chosen, and one that people generally would have better understood.

This constitutional provision, requiring the object of the law to be expressed in the title of the act, has been so frequently and even recently discussed in this state that we do not feel warranted in again attempting to go over the ground. —See *Connecticut Mutual Life Ins. Co. v. The State Treasurer, 31 Mich., 17,* and authorities there cited. We think that none of the evils designed to be prevented by this constitutional provision exist in this case, and although more particularity might have been used, yet the object is fairly indicated and the body of the act is not inconsistent or incongruous with the title.

We are of opinion that under the facts in this case the respondent was legally elected alderman of the eighth ward of the city of East Saginaw, and that he was not at the time of the filing of the information in this case guilty of unlawfully holding and exercising such office of alderman, and judgment must be entered accordingly.

The other Justices concurred.