CASE 66—PETITION EQUITY—OCTOBER 11.

## Walters v. Richardson.

APPEAL FROM ESTILL COURT OF COMMON PLEAS.

1. STATUTES—TITLE OF ACT.—An act of the Legislature entitled "An act to define the county line of Estill county" does not relate to a subject not expressed in the title, although the act fixes an entirely new boundary, and does not merely make certain that which was before uncertain, the word "define" being used in an enlarged and not a restricted sense. And this is true, although the recitals of the act show that the object of the act was merely to remove a doubt as to the true boundary line.
2. WHERE AN ACT OF THE LEGISLATURE IS VALID ON ITS FACE PAROL TESTIMONY IS NOT COMPETENT to show that the Legislature was deceived as to the object or effect of the act.

V. P. SMITH FOR APPELLANT.

The subject of the act of May 9, 1890, defining the boundary line of Estill county, is sufficiently expressed in the title. (Chiles v. Drake, 2 Met., 150; Phillips v. Cin. & Cov. Bridge Co., 2 Met., 222; Johnson v.

Walters v. Richardson.

Higgins, 3 Met., 569; Smith v. Cochran, 8 Bush, 112; Collins v. Henderson, 11 Bush, 74.

J. B. WHITE, HUGH RIDDELL FOR APPELLEE.

As the Act of May 9, 1890, purporting to define the boundary line of Estill county, does not merely make certain that which was before uncertain, but establishes manifestly a new and different line whereby a large extent of territory is taken from Estill county and attached to another county, the title is misleading and deceptive, and for this reason the court should declare the act unconstitutional.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

During the session of the Legislature for the years 1889 and 1890 an act was passed entitled an "Act to define the county line of Estill county." The recital of that act shows that the citizens of that county were unable, by reason of the uncertainty as to the location of the boundary line, to know whether they were the citizens of Estill or some other county; and then the act proceeds to define the boundary line in such a specific mode as to remove all doubt as to the true boundary line. The title of the act and all the steps following the title show it to be a valid enactment and subject to no constitutional objection. The legislation is authorized by the title, for the act clearly defines the boundary of Estill county. It is claimed, however, that the title is misleading and deceptive because upon the agreed facts, the Legislature, instead of defining a boundary that was uncertain, abandoned the uncertain boundary and so changed the line as to take one hundred and sixty voters from the county of Estill and included them within the territory of the county of Powell, an adjoining county, and, with these citizens, taxable property of the value of one hundred and seventy-nine thousand dollars was transferred from the county of Estill to the county of Powell. The question originated

in this manner : The sheriff of Estill county, disregard-
ing the legislative enactment of 1890 defining the boundary·
of that·county, endeavored to collect the taxes of a tax-
payer who had been included within the county of Powell,
by the act of 1890, and his property assessed in Estill
county as if no change in the boundary had been made.
The tax-payer enjoined the sheriff of Estill county from
coercing payment in that way, insisting that he owed his
allegiance to Powell county and not to Estill. The
sheriff, in answer to the petition of the citizen, the plain-
tiff, set up the fact that, although the legislative act upon·
its face was regular and proper, the title of the act had
been departed from, and instead of defining an uncertain
boundary the boundary of Estill had been greatly dimin-
ished and that of Powell greatly enlarged; that the
boundary line had been changed, and at least one hundred
and sixty voters taken from the one county and added to
the other. A demurrer was filed by the plaintiff to the
answer, and overruled; and the plaintiff electing to stand
by the demurrer a judgment was rendered in favor of the
sheriff directing him to collect the tax, upon the ground
that the act under which the change of boundary was
made was unconstitutional. At first impression it would
seem to be a great hardship on Estill county to have its
boundary changed in that mode, and that a fraud had
been practiced upon the Legislature in obtaining an
enactment that did not in good faith accomplish the object
in view; but when conceding that the representatives of
the people, including the members from those counties, had
full and complete power over the subject matter, with the·
right to make certain or to change the boundary line of
either county, can this court rightfully determine, in a liti-

Walters v. Richardson.

gation between two citizens of Estill county, or between a citizen of Estill and one of Powell county, that the Legislature was misled in fixing this boundary or had no facts before it requiring, if the position of the appellee be the correct one, the location of the boundary to be at the points designated by the statute of 1890 in order to remove all doubt as to the county in which the tax-payer lived? We think not. The legislative department of the Government had plenary power over the subject matter, and we must assume that a full investigation was had of the wants of the people of Estill and the necessity for so defining the boundary as we find it in the act, in order to cure the evil complained of. They may have used the word *define* in its enlarged instead of its restricted sense, and if the facts admitted by the demurrer are true we must then assume that the Legislature intended the word *define* to have this enlarged meaning. Where the act is perfectly valid on its face, it would be a dangerous precedent to say that the citizen could present a state of facts in an answer or petition, admitted by the opposite party to be true on demurrer, or even by the testimony of witnesses, so as to justify this court in holding the act unconstitutional, when it affects not only the parties litigant but the entire tax-paying population of both counties, none of whom are heard save the parties to the litigation. Besides, we find numerous acts passed by every Legislature defining the jurisdiction of courts of justice, defining the power of those in authority, or defining boundary lines, and in all those cases the powers are either enlarged or restricted, the Legislature giving to the word *defined* its enlarged meaning; and while if the act on its face showed that the meaning was restricted and the Legislature had

paid no regard to the title of the act, we would hold it unconstitutional, where we are asked to leave the act and look to parol proof for the purpose of showing that the Legislature did not mean to do that which it has done by express enactment, it would be invading the province of that department of the government and work incalculable mischief. Why then did the Legislature use the word define in its enlarged sense? The answer is, because the fixing of the boundary, if the facts admitted by the demurrer are true, shows that this was the legislative meaning, else they would not have taken a magisterial district from the one county and attached it to the other. In People v. Bradly, 36 Mich., 452, it is said, the words to define the extent of a kingdom or country must ordinarily restrict or enlarge the boundary; and further, " we have never heard of any question being made as to the want of authority to enlarge the possessions of another under a power given to define them." If, therefore, the Legislature knew, and we must assume it did, that one hundred and sixty voters were being taken from the one county and added to the other by this boundary, we must also assume that such was the plain intent, and the word *define* used by that body in its enlarged and not restricted sense. The judgment below is reversed with directions to sustain the demurrer to the answer, and for proceedings consistent with this opinion.