ATTORNEY GENERAL, *ex rel.* BATTISHILL, *v.* TOWNSHIP
BOARD OF SPRINGWELLS.

1. STATUTES—TITLE—SUBJECT-MATTER.
   The title of Act No. 627, Local Acts 1905, viz. : "An act to annex certain territory * * * to the city of Detroit, and to apply and make operative in said territory all statutes and laws now or hereafter made applicable to and operative in said city," clearly expresses the general purpose of the law, to which all its provisions are germane and incidental, within section 20, article 4, of the Constitution, notwithstanding incidential provisions, the effect of which will be to amend the charter and change the boundaries of the city.

2. CONSTITUTIONAL LAW — LEGISLATIVE POWERS — DELEGATION — POPULAR VOTE.
   Act No. 627, Local Acts 1905, relating to the annexation of territory to the city of Detroit, and providing in section 9 that the act shall not become operative until the proposition to annex the territory shall be approved by a vote of the electors, does not make an unconstitutional delegation of legislative power.

3. SAME — MUNICIPAL CORPORATIONS — LOCAL SELF-GOVERNMENT.
   Municipal corporations are mere instrumentalities of the State for the more convenient administration of local government. Their powers are such as the legislature may confer, and these may be enlarged, abridged, or entirely withdrawn at its pleasure.[1]

4. STATES—LEGISLATIVE DISTRICTS—APPORTIONMENT.
   Act No. 627, Local Acts 1905, providing for the annexation of a part of the township of Springwells to the city of Detroit, was approved by the governor and given immediate effect on June 8, 1905. In accordance with the Constitution and laws of the State, an enumeration of the inhabitants thereof was made in 1904, and on June 16, 1905, an act was passed to apportion anew the representatives of the State legislature among the several counties and districts. The popular election under

---

[1] As to power of legislature to impose burdens upon municipalities and to control their local administration and property, see note to *State, ex rel. Bulkeley,* v. *Williams* (Conn.), 48 L. R. A. 465.

which the local act was accepted was held on July 31, 1905, and before the division, by the board of supervisors, of the county into legislative districts. *Held*, that the local act was not in violation of section 4, article 4, of the Constitution, which provides that each apportionment and division into representative districts by any board of supervisors shall remain unaltered until the return of another enumeration.

5. SAME.

While the apportionment act of 1901 was supplanted by the apportionment act of June 16, 1905, it must be presumed that the legislature, in passing the latter act, had in mind Act No. 627, Local Acts 1905, which had been given immediate effect, and by the provisions of which the territory described was not to be annexed to the city of Detroit until the first Monday of April, 1906, and, construing the two statutes together, it appears that it was the intention of the legislature that during the interval the rights of the electors in such territory should be determined by the old law.

6. MUNICIPAL CORPORATIONS—ANNEXATION OF TERRITORY—CONSTITUTIONALITY.

Act No. 627, Local Acts 1905, providing for the annexation of certain territory to the city of Detroit, is not unconstitutional as depriving the people of the annexed territory of their right to local self-government in their village and school matters.

7. CONSTITUTIONAL LAW—DUE PROCESS—CITIES—ANNEXATION OF TERRITORY.

Act No. 627, Local Acts 1905, providing for the annexation of certain territory to the city of Detroit, is not unconstitutional as depriving the residents of the annexed territory of their property without due process of law by means of illegal taxation.

8. MUNICIPAL CORPORATIONS—ANNEXATION OF TERRITORY—CONSTITUTIONALITY.

Act No. 627, Local Acts 1905, providing for the annexation of certain territory to the city of Detroit, is not objectionable as placing the inhabitants of the annexed territory outside of the limits of all senatorial and congressional districts, and thus depriving them of the right to be represented, as no provision is made in the act for changing the boundaries of such districts.

Mandamus by John E. Bird, attorney general, on the relation of Morris Battishill, to compel the township board

of the township of Springwells to reconvene and rescind a resolution in regard to an election. Submitted March 22, 1906. (Calendar No. 21,625.) Writ denied March 27, 1906.

*George W. Coomer* (*Thomas A. E. Weadock* and *John J. Speed*, of counsel), for relator.

*Richard I. Lawson* (*Timothy E. Tarsney*, of counsel), for respondent.

*Timothy E. Tarsney* (*Henry M. Duffield*, of counsel), for intervenor city of Detroit.

*George G. Scott* (*H. H. Hatch* and *Fred A. Baker*, of counsel), for intervenor village of Delray.

BLAIR, J. The attorney general, upon the relation of a taxpayer and elector of the village of Delray, in the township of Springwells, files his petition, praying for a writ of mandamus commanding certain action of the township board, upon the ground that Act No. 627, Local Acts 1905, under which said board took the action complained of, was unconstitutional and void. The act in question was adopted by the legislature, approved by the governor, and given immediate effect on the 8th day of June, 1905, and is entitled:

"An act to annex certain territory situated in the township of Springwells, in the county of Wayne, to the city of Detroit, and to apply and make operative in said territory all statutes and laws now or hereafter made applicable to and operative in said city."

Section 1 of the act declares that:

"On or after the first Monday in April, 1906, the territory hereinafter described situated in the township of Springwells, in the county of Wayne, shall be by virtue of this act annexed to and made to form a part of the city of Detroit."

Section 2 directs that the said territory so annexed to said city on and after the first Monday in April aforesaid

shall be, in part, annexed to the present sixteenth ward in said city, and, in part, form a ward to be known as the eighteenth ward in said city. Section 3 directs the common council of the city of Detroit, within 15 days after the first Monday in April, 1906, to divide said ward 18 into election districts, appoint registrars and inspectors of election therein, and call a special election to be held in said ward 18 for the election of officers. Section 4 declares that:

" From and after the said first Monday in April, 1906, the corporate organization of the villages of Delray and Woodmere, and all the powers and duties of the several boards and officers thereof shall cease and determine, and all corporate powers and authority vested in the said township of Springwells, in respect to the territory hereby annexed to said city, shall cease and determine, and thereupon all right and title to property, both real and personal, and all claims and demands belonging * * * to the township of Springwells in its corporate capacity shall pass to and vest in said city. The officers of said villages and township shall thereupon transfer the possession and control thereof to the common council of said city, or to such officer or officers as said common council may direct; all moneys belonging to either of said villages shall be paid over to said city, and all books, papers and documents belonging to said villages or either of them shall be transferred and delivered to the common council of said city or to such officers as they may designate. All bonds, debts, and obligations, of every name and nature, owing by either of said villages at the date aforesaid shall be borne and paid by said city."

Section 5 provides for the apportionment of taxes between the city and township according to the relative valuation of the taxable property. Section 6 directs that on and after the 30th day of June, 1906, the corporate organization of the several public schools and school districts within the territory so annexed and the powers and duties of the several boards and officers thereof shall cease and determine, and thereupon all right and title to the property, both real and personal, belonging to either of said public schools or school districts situated entirely

within said territory so annexed to said city, shall pass
and vest in the board of education of the city of Detroit.
Section 8 declares that all the provisions of the charter of
the city of Detroit and all statutes and laws applicable to
the said city shall, on and after the first Monday in April,
1906, apply to and be operative in the territory so annexed
to said city in like manner as in the other territory of said
city, except as in the act otherwise provided.    Section 9
declares:

" The foregoing provisions of this act shall not become
operative until the proposition to annex the territory here-
inbefore described, to the city of Detroit, shall be ap-
proved by a majority vote of the qualified electors voting
thereon residing in said territory at an election to be held
as herein provided for that purpose."

Provision is made in said section for the machinery for
holding said special election in accordance with its re-
quirements.

The relator contests the constitutionality of said annex-
ation act, and alleges several grounds of invalidity:

" (*a*) The referendum contained in said act and the sub-
mission of the question whether it should become a law or
not to a vote of the electors of the territory therein de-
scribed is unconstitutional and void, being contrary to
article 1 of section 4 of the Constitution of Michigan,
which provides: ' The legislative power shall vest in a
senate and a house of representatives.'    Said act is void
because it allows the voters of the villages of Delray and
Woodmere and a portion of the township of Springwells
aforesaid to amend the charter of the city of Detroit.

" (*b*) The act embraces more than one object, and those
objects are not designated in the title of the act, contrary
to section 20 of article 4 of the Constitution of said State.

" (*c*) The act undertakes to amend the charter and
change the boundaries of the city of Detroit, which ob-
jects are not mentioned in the title.

" (*d*) Said act is void because it undertakes to allow the
general laws of the said State to be amended and repealed
by a vote of the people of two villages and part of a town-
ship; said laws not being any of those upon which the

people of said State or said electors have the right to vote under the terms of the Constitution of this State.

"(e) Because it permits the voters of one village in said State to repeal the charter and destroy the incorporation of another and different village in said State, against the will of the electors of the latter.

"(f) Because it would alter the boundary of legislative district, contrary to the Constitution of this State.

"(g) Because it increases the number of supervisors in said county, contrary to the Constitution of this State.

"(h) Because it allows the people of the villages of Delray and Woodmere and a portion of the township of Springwells to repeal the law creating the public schools of Delray.

"(i) Because it deprives the people of Delray of their right of local self-government in their village and school matters and, through the means of illegal taxation, to deprive them of their property without due process of law, contrary to the Constitution of said State and the Constitution of the United States."

The answer of respondents upon the validity of Act No. 627 of the Local Acts of 1905, referred to in said petition, avers, in the ninth paragraph thereof, that an election was held in said territory proposed to be annexed to the city of Detroit in pursuance of the requirements of said act, and that a majority of 508 of the qualified electors voting thereon, residing in said territory proposed to be annexed to the city of Detroit, voted in favor of said proposition of annexation; that an enumeration of the inhabitants of the State of Michigan was made pursuant to law in the year 1904, and that the legislature apportioned to the county of Wayne 14 representatives in the State legislative body by Act No. 244 of the Public Acts of 1905; that on October 23, 1905, the board of supervisors divided the county of Wayne into four legislative districts, and placed said annexed territory in the First representative district as a part of the city of Detroit, and placed the township of Springwells, consisting only of that part of the territory of said township as would remain after the annexation, in the fourth representative district of Wayne county.

The title of the act clearly expresses the general purpose of the law, to which all of its provisions are germane and incidental.   We entertain no doubt of its sufficiency. *People* v. *Mahaney,* 13 Mich. 481; *People* v. *Bradley,* 36 Mich. 447; *Hargrave* v. *Weber,* 66 Mich. 59.

The most serious question in the case arises upon the objection that the referendum clause of the act violates the Constitution, which lodges all legislative power in the senate and house of representatives, and that such power cannot be delegated.   There are not wanting highly respectable authorities to support this objection.   On the other hand, authorities of equal weight hold such a reference as that in question here to be permissible, and not a delegation of legislative power.   The precise question presented by this record has not been passed upon by this court.   We do not think, however, that this case falls exactly within the principle of *Feek* v. *Bloomingdale Township Board,* 82 Mich. 393 (10 L. R. A. 69).   In that case the operation of the local option law in a particular county is made to depend, to a certain extent, upon the approval of a majority of the electors of said county, but the decision rests largely upon the constitutional provision cited by the court.   It is true, also, as contended by counsel for relator, that the local option laws are an exercise of the police power, and are sustainable upon that ground.   But this is simply saying that in such cases it is proper to submit the question whether the provisions of such a law shall be availed of in a particular locality to the judgment of the people of that locality.   As said by Justice COOLEY and quoted with approval by this court in the *Feek Case,* in speaking of the constitutionality of local option laws:

"They relate to subjects which, like the retailing of intoxicating drinks, or the running at large of cattle in the highways, may be differently regarded in different localities, and they are sustained on what seems to us the impregnable ground that the subject, though not embraced within the ordinary power of the municipalities to make

by-laws and ordinances, is, nevertheless, within the class of police regulations, in respect to which it is proper that the local judgment should control." Cooley on Constitutional Limitations (7th Ed.), p. 174.

Many of the cases which support relator's contention involve general laws affecting the whole people of the State, and the weight of authority prohibits a reference of such laws to the people for their approval or rejection.

"The question then arises, whether that which may be done in reference to any municipal organization within the State may not also be done in reference to the State at large. May not any law framed for the State at large be made conditional on an acceptance by the people at large, declared through the ballot box? If it is not unconstitutional to delegate to a single locality the power to decide whether it will be governed by a particular charter, must it not quite as clearly be within the power of the legislature to refer to the people at large, from whom all power is derived, the decision upon any proposed statute affecting the whole State? And can that be called a delegation of power which consists only in the agent or trustee referring back to the principal the final decision in a case where the principal is the party concerned, and where perhaps there are questions of policy and propriety involved which no authority can decide so satisfactorily and so conclusively as the principal to whom they are referred?

"If the decision of these questions is to depend upon the weight of judicial authority up to the present time, it must be held that there is no power to refer the adoption or rejection of a general law to the people of the State, any more than there is to refer it to any other authority. The prevailing doctrine in the courts appears to be that, except in those cases where, by the Constitution, the people have expressly reserved to themselves a power of decision, the function of legislation cannot be exercised by them, even to the extent of accepting or rejecting a law which has been framed for their consideration." Cooley on Constitutional Limitations (7th Ed.), p. 168.

The learned jurist, however, expresses the opinion that it is clearly constitutional to refer to the people of a locality for their determination questions which peculiarly affect that locality.

"Nevertheless, as the corporators have a special and peculiar interest in the terms and conditions of the charter, in the powers conferred and liabilities imposed, as well as in the general question whether they shall originally be or afterwards remain incorporated at all or not, and as the burdens of municipal government must rest upon their shoulders, and especially as by becoming incorporated they are held, in law, to undertake to discharge the duties the charter imposes, it seems eminently proper that their voice should be heard on the question of their incorporation, and that their decisions should be conclusive, unless, for strong reasons of State policy or local necessity, it should seem important for the State to overrule the opinion of the local majority. The right to refer any legislation of this character to the people peculiarly interested does not seem to be questioned, and the reference is by no means unusual.

"For the like reasons, the question whether a county or township shall be divided and a new one formed, or two townships or school districts formerly one be reunited, or a city charter be revised, or a county seat located at a particular place, or, after its location, removed elsewhere, or the municipality contract particular debts, or engage in a particular improvement, is always a question which may, with propriety, be referred to the voters of the municipality for decision." Cooley on Constitutional Limitations (7th Ed.) pp. 166–168.

The opinion of Justice COOLEY upon a question of constitutional law is entitled to great weight, and we are satisfied that in this instance it is in harmony with the decisions of the great majority of the courts. See *People* v. *McFadden,* 81 Cal. 489; *People* v. *Nally,* 49 Cal. 478; *Stone* v. *City of Charlestown,* 114 Mass. 214; *Graham* v. *City of Greenville,* 67 Tex. 62; *State* v. *O'Neill,* 24 Wis. 149. We hold, therefore, that the act was not unconstitutional as an unlawful delegation of legislative power. This conclusion renders it unnecessary to consider several of the objections urged against the act, since the results which followed the acceptance of the act by the vote of the people interested flowed from the act itself, and not from the people who voted to adopt it.

"Municipal corporations are mere instrumentalities of the State for the more convenient administration of local government. Their powers are such as the legislature may confer, and these may be enlarged, abridged, or entirely withdrawn at its pleasure." *Meriwether* v. *Garrett*, 102 U. S. 472, 511.

Does the act violate the provisions of article 4, § 4, of the Constitution ? In accordance with the Constitution and laws of the State, an enumeration of the inhabitants thereof was made in 1904. On June 16, 1905, "An act to apportion anew the representatives of the State legislature among the several counties and districts of this State" was approved, and took effect on September 17, 1905. Act No. 244, Pub. Acts 1905. The election under Act No. 627, Local Acts 1905, was held on the 31st day of July, 1905. At a meeting of the board of supervisors of Wayne county, held on the 23d day of October, 1905, the board, pursuant to the statute, section 2486, 1 Comp. Laws, divided the county of Wayne into four legislative representative districts and thereby declared that the several representative districts should be composed of territory and legislative representatives apportioned to each district, as follows: District No. 1, to be the city of Detroit, and to be entitled to 11 legislative representatives. District No. 2, to be comprised of the townships of Dearborn, Gratiot, Greenfield, Grosse Point, Hamtramck, Nankin, and Redford, and to be entitled to 1 legislative representative. District No. 3, to be comprised of the townships of Brownstown, Canton, Huron, Livonia, Plymouth, Romulus, Sumpter, Taylor, and Van Buren, and to be entitled to 1 legislative representative. District No. 4, to be comprised of the townships of Ecorse, Monguagon, Springwells, and the city of Wyandotte, and to be entitled to 1 legislative representative. Under the apportionment and division into representative districts made after the census of 1900, the city of Detroit was made the first district, and the townships of Springwells and Ecorse and the city of Wyandotte, the fourth district, of Wayne county. It is

alleged in the answer of respondents, and not denied, that, in making said division and apportionment, the said board of supervisors, in obedience to the act of June 8, 1905, treated the territory covered by the act of June 8, 1905, as a part of the city of Detroit, and treated the township of Springwells as consisting only of that part of the territory of said township as would remain after the annexation. Independent of such averment, the courts would presume, in the absence of record evidence to the contrary, that the board of supervisors acted in conformity to the law. Even if it clearly appeared from the records of the board that it had disregarded the statute, such illegal action could not affect the constitutionality of the law, which alone is attacked here. We are of the opinion that the local act was not unconstitutional for this reason, and that the case, in this respect, falls within the decision in *People* v. *Bradley*, 36 Mich. 447.

It is objected that this conclusion disfranchises the electors of the detached territory. We do not regard this objection as sound. It was held, in *Giddings* v. *Secretary of State*, 93 Mich. 1 (16 L. R. A. 402), "that each apportionment act remains in force until it is supplanted by a subsequent valid act." While the apportionment act of 1901 was supplanted by the apportionment act of 1905, we do not think it necessarily follows that all acts under the prior statute would be void. It must be presumed that the legislature, in passing the apportionment act of June 16, 1905, had in mind the local act of June 8, 1905, or vice versa, which had been given immediate effect, and by the provisions of which the territory described was not to be annexed till the first Monday of April, 1906. Construing the two statutes together, we think it was the intention of the legislature that the new act should not supplant the old as to the territory in question until the time arrived when the annexation actually took place, and that, during the interval, the rights of electors in such territory should be determined by the old law.

It is further objected that the act is unconstitutional—

" Because it deprives the people of Delray of their right of local self-government in their village and school matters and, through the means of illegal taxation, to deprive them of their property without due process of law, contrary to the Constitution of said State and the Constitution of the United States."

We regard these objections as disposed of against relator's contention by the following decisions, which we content ourselves with citing: *People* v. *Ryan*, 19 Mich. 203; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514; *Turnbull* v. *Board of Education of Alpena Township*, 45 Mich. 496; *Smith* v. *Mayor, etc., of Saginaw*, 81 Mich. 123; 1 Comp. Laws, §§ 3462, 3465, 3469; *Township of Gladwin* v. *Township of Bourrett*, 131 Mich. 353; *Kelly* v. *Pittsburgh*, 104 U. S. 78.

It is contended that the act is unconstitutional because its effect is to place the inhabitants of the annexed territory outside of the limits of all sentatorial and congressional districts and thus deprive them of the right to be represented in the senate and in congress.   The answer to this contention is that the act had no effect on the boundaries of either a senatorial or a congressional district. There are no other objections which, in our opinion, require discussion.   In view of the fact, however, that there is some variation in the language of the act as to the time when the annexation shall become effective, we think it proper to say that, in our opinion, it was the intention of the legislature that the annexation should take effect the first Monday of April, 1906.

The writ is denied.

Carpenter, C. J., and McAlvay, Grant, Ostrander, Hooker, and Moore, JJ., concurred.