THE STATE OF INDIANA, EX REL. DEVENING, *v.* BARTHOLOMEW.

[No. 21,866. Filed June 23, 1911.]

1. PLEADING.—*Demurrers.*—*Waiver.*—Defects in a pleading not specified in a demurrer thereto are waived. p. 185.
2. PLEADING.—*Demurrers.*—*Form.*—Alleged defects in the pleadings to which demurrers are addressed should be set out in such demurrers in plain and concise language and separately numbered; and no arguments thereon should be included in such demurrers. p. 185.
3. STATUTES.— *Title.*— *Sufficiency.*— *"Defining."*— *Constitutional Law.*—The word "defining," as used in the title of the act of 1911 (Acts 1911 p. 103) in form: "An act defining the judicial district of the Shelby and Marion Superior Court," etc., imports the creation, or establishment of a new court. pp. 185, 187.
4. STATUTES.—*Titles.*—*Subject-Matter.*—Where the subject-matter of an act is stated generally in the title thereof, or where it may be inferred from the details stated therein, such title is sufficient. p. 187.

5. COURTS.—*Vacancies.—Appointments.*—Vacancies in courts cannot be filled by the legislature. p. 190.

6. STATUTES.—*Construction.—Intention.—Words.*—The words of a statute will be construed in accord with the apparent legislative intent, even though their exact and literal meaning would not warrant such construction. p. 191.

7. COURTS.—*Shelby Superior.—Statutes.—Construction.*—The act of 1911 (Acts 1911 p. 103) "defining the judicial district of the Shelby and Marion Superior Court," etc., repealing all conflicting laws, and providing that nothing therein shall affect existing laws as to the courts of Marion county, except as to room five of the Superior Court of Marion County, creates the Shelby Superior Court and continues the Superior Court of Marion County consisting of five rooms, or divisions, except as it affects the terms and proceedings of room five thereof. p. 193.

8. COURTS.— *Superior.— Marion and Shelby Counties.— Acts.— Authentication.*—Under the act of 1911 (Acts 1911 p. 103) the court in room five of the Superior Court of Marion County has the same jurisdiction it formerly possessed as well as the additional jurisdiction of the Shelby Superior Court; the Shelby Superior Court has the jurisdiction conferred by such act; the judges of the different rooms of the Superior Court of Marion County may sit interchangeably in said rooms; and the proceedings of the Superior Court of Marion County may be authenticated as before the passage of such act, and those of the Shelby Superior Court may be authenticated by the clerk thereof in the usual manner. p. 194.

9. COURTS.— *Circuit.— Superior.— Officers.—* Circuit and superior judges are state officers and they may be required to perform their duties in counties attached to their judicial districts after they are elected. p. 195.

10. CONSTITUTIONAL LAW.—*Courts.—Shelby Superior.—Statutes.—* The act of 1911 (Acts 1911 p. 103) creating the Shelby Superior Court and attaching it to room five of the Superior Court of Marion County and requiring the judge of such room to preside over such Shelby Superior Court, is valid. p. 195.

11. COURTS.—*Superior.—Jurisdiction.*—The superior courts have statutory jurisdiction; and the jurisdiction of such superior courts, or any division thereof, may be different. p. 196.

12. STATUTES.—*Wisdom of.—Courts.*—Courts cannot declare an act invalid merely because it is unwise, unjust, or inexpedient. p. 196.

13. OFFICERS.—*Superior Court Judges.—Salaries.—Diminishing of, During Term.*—Salaries of judges of the superior courts may be diminished during their terms, salaries of officers, except as regulated by the Constitution, being discretionary with the legislature. p. 197.

14. STATUTES.—*Creation of Courts.*—*Salaries of Judges.*—The act of 1911 (Acts 1911 p. 103) creating the Shelby Superior Court and fixing the salary of the judge thereof would not necessarily be invalid, even though the salary fixed should be invalid. p. 197.

15. COURTS.—*Name.*—*Inaccuracies.*—The use interchangeably of the names "Superior Court of Marion County" and "Marion Superior Court," and "Shelby Superior Court," and "Superior Court of Shelby County," in an act of the legislature creating a superior court district, does not impair the validity of the act, the intention being clear. p. 197.

16. MANDAMUS.—*Judges.*—*Holding Court.*—The judge of a superior court may be mandated to hold court as required by law. p. 197.

From the Marion Circuit Court (20,081); *Charles Remster,* Judge.

Action by The State of Indiana, on the relation of Philip Devening, against Pliny W. Bartholomew. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Elmer Bassett, David L. Wilson, Wray & Campbell, Herbert C. Jones, Frank H. Wolfe* and *Hord & Adams,* for appellant.

*Gavin, Gavin & Davis. Henry Warrum* and *Sullivan & Knight,* for appellee.

MONKS, J.—This action for mandate was brought by the relator under the provisions of an act approved March 6, 1911 (Acts 1911 p. 541), to compel appellee to appear and preside over the Shelby Superior Court, it being alleged in the complaint that holding said court by appellee is specially enjoined by an act approved March 1, 1911 (Acts 1911 p. 103), and that such duty results from the fact that appellee holds the office of judge of room number five of the Superior Court of Marion County. Appellee's demurrer to the complaint for want of facts was sustained. The relator failed and refused to plead further, and judgment was rendered in favor of appellee.

The errors assigned call in question the action of the court in sustaining said demurrer.

Said demurrer for want of facts is governed by an act approved March 4, 1911 (Acts 1911 p. 415), which amended

§85 and §89 of "An act concerning proceedings in civil cases," approved April 7, 1881 (Acts 1881 p. 240, §§344, 348 Burns 1908).

Under the proviso in §2 of the act of 1911 (Acts 1911 p. 415), the defects in a complaint not specifically stated in the memorandum, which is a part of the demurrer, are

1. waived by the demurring party, and he cannot thereafter question the sufficiency of the complaint for any defect not so specified. Said memorandum should contain only the reasons why the complaint is insufficient, stated in plain and concise language, without repetition, and no argument to sustain them should be included therein.

2. Any argument upon such demurrer if in writing must be upon a separate paper, and is no part of the demurrer. Reasons stated in the memorandum should be numbered or otherwise designated so that in their consideration they can be referred to by number or some other designation.

It is the better practice to set out said reasons immediately following the cause of demurrer, on the same paper, and that the party filing the demurrer for want of facts, or his counsel, sign it at the close of the reasons set forth, so that the cause of demurrer and the reasons stated why the complaint is insufficient constitute one instrument or writing, and may be signed and filed as one pleading.

It is insisted by appellee that the act approved March 1, 1911 (Acts 1911 p. 103), entitled "An act defining the judicial district of the Shelby and Marion Su-

3. perior Court, fixing the time and place of holding courts therein, providing for the jurisdiction of said courts and otherwise regulating the manner of holding and length of terms of the sessions of said courts in each of said counties," etc., is unconstitutional and void, because the subject of the act is not expressed in the title, as required by article 4, §19, of the Constitution, which reads as follows: "Every act shall embrace but one subject and matters properly connected therewith, which subject

shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." This contention is based on the claim that the word "defining," as used in said title, when taken in its plain and ordinary sense, as required by §240 Burns 1908, §240 R. S. 1881, does not mean "create" or "establish," and that therefore "the part of the act that purports to create the Shelby and Marion Superior Courts is void, because not expressed in the title of the act."

This is not the first time the legislature has used the word "define" or "defining," instead of the word "create" or "establish," in an act creating new judicial districts. Acts 1885 p. 119; Acts 1889 p. 50; Acts 1905 p. 119.

The word "constitute" instead of the word "create" or "establish" has also been used in the titles of acts creating new judicial circuits. Acts 1867 p. 84; Acts 1871 p. 63.

The act approved March 6, 1873 (Acts 1873 p. 87), which abolished the common-pleas courts and established a number of new judicial circuits did not have the word "create" or "establish" in its title. The title of said act reads as follows: "An act to divide the State into circuits for judicial purposes, fixing the time of holding courts therein, abolishing the courts of common pleas, and transferring the business thereof to the circuit courts, and providing for the election of judges and prosecuting attorneys in certain cases."

By an act, entitled "An act concerning the courts in the counties of Howard, Tipton, Grant and Delaware, and declaring an emergency," approved March 1, 1909 (Acts 1909 p. 79), the legislature abolished the Howard Superior Court, established the Delaware Superior Court, and created a new judicial circuit consisting of the county of Howard.

The constitutionality of none of these acts has been assailed on the ground that the word "create" or "establish" was not used in the title.

In the case of *Board, etc.*, v. *Albright* (1907), 168 Ind.

564, 568, it was said by the court, in response to a contention that an act was in violation of said article 4, §19, of 4. the Constitution, that "it is quite permissible to use the details of a title where available, to grasp the general subject to which an act relates. *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100; *Isenhour* v. *State* (1901), 157 Ind. 517, 87 Am. St. 228. A standard textbook states: 'The subject of an act may be expressed generally in the title, or spelled out from details, and occasionally from details which are independent and unconnected except through some general subject as cousins german are related through a common ancestor. According to the authorities the general subject need not appear in the title, if it is clearly disclosed or readily inferred from the details expressed.' 1 Lewis's Sutherland, Stat. Constr. (2d ed.) §134." See, also, *Central Union Tel. Co.* v. *Fehring* (1896), 146 Ind. 189.

As was said in the case of *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 168: "In the interpretation of the title we must look to the body of the act, and in 3. construing the body we must look to the title; and if it appears from both that all the provisions of the act are fairly referable to one general subject, and that subject is clearly expressed in the title, the act is valid, though there may be more than the general subject expressed therein. 1 Lewis's Sutherland, Stat. Constr. (2d ed.) §131, and cases cited."

In the case of *Hargis* v. *Board, etc.* (1905), 165 Ind. 194, we said: "The title of an act is to receive a liberal construction if necessary to sustain the legislative intent. If the words used in a title, taken in any sense or meaning they will bear, are sufficient to cover the provisions of the act, the act will be sustained even though such meaning may not be the most common meaning of such words. These rules, however, are to be used to effectuate, not to defeat, the legislative intent. 26 Am. and Eng. Ency. Law (2d ed.) 583-590; 1 Lewis's Sutherland, Stat. Constr. (2d ed.) §§121, 127-129,

134; *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100, 106, 107, and cases cited; *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 184-188, 33 L. R. A. 213, 51 Am. St. 174; *State* v. *Arnold* (1895), 140 Ind. 628; *Walker* v. *Dunham* (1861), 17 Ind. 483. 'The courts will not resort to a critical construction of the title in order to hold a statute unconstitutional. On the contrary, the language of the title is in all cases given a liberal interpretation, and the largest scope accorded the words employed that reason will permit in order to bring within the purview of the title all the provisions of the act.' 26 Am. and Eng. Ency. Law (2d ed.) 583.'' And see *Clare* v. *State* (1879), 68 Ind. 17, 25, and cases cited; *Mull* v. *Indianapolis, etc., Traction Co.* (1907), 169 Ind. 214, 222.

To define is "to fix, establish or prescribe authoritatively." Century Dict. See, also, *Robert J. Boyd, etc., Co.* v. *Ward* (1898), 85 Fed. 27, 28 C. C. A. 667, 675. The word "define" is frequently used in legislation to mean create, establish, enlarge or extend. *In re Fourth Judicial District* (1893), 4 Wyo. 133, 137, 32 Pac. 850, and cases cited; *People, ex rel.,* v. *Bradley* (1877), 36 Mich. 447; *Commissioners, etc.,* v. *Bailey* (1874), 13 Kan. 600, 607, 609; *State, ex rel.,* v. *Commissioners, etc.* (1899), 41 Kan. 630, 634, 21 Pac. 601; *State, ex rel.,* v. *Burr* (1907), 16 N. Dak. 581, 113 N. W. 705; *State, ex rel.,* v. *Ely* (1907), 16 N. Dak. 569, 113 N. W. 711, 14 L. R. A. (N. S.) 638; *Walters* v. *Richardson* (1892), 93 Ky. 374, 20 S. W. 279; *Gould* v. *Hutchins* (1833), 10 Me. 145, 154.

In the case of *People, ex rel.,* v. *Bradley, supra,* in construing the word "define," as used in the title of an act, it is said: "While the word 'define' may be, and frequently is, used in the sense and for the purpose claimed, and while we might concede such to be the general and more popular use of the word, yet it is not used exclusively in such a sense. It has a broader and different meaning. It is frequently used in the titles of acts, and but seldom in the narrower sense, or as merely defining powers previously given.

An examination of our session laws will show that acts
have frequently been passed, the constitutionality of which
has never been questioned, where the powers and duties con-
ferred could not be considered as merely explaining, or
making more clear those previously conferred or attempted
to be, although the word 'define' was used in the title. In
legislation it is frequently used in the creation, enlarging
and extending the powers and duties of boards and officers,
in defining certain offenses and providing punishment for
the same, and thus enlarging and extending the scope of the
criminal law. And it is properly used in the title where the
object of the act is to determine or fix boundaries, or es-
pecially where a dispute has arisen concerning them. It is
used between different governments, as, 'to define the extent
of a kingdom or country.' Indeed, it is a word of very fre-
quent and general use, and although even the settlement of
a disputed boundary must necessarily and inevitably extend
the line and take in new or additional territory, within the
understanding of one of the claimants, we have never heard
of any question being made as to want of authority to en-
large the possessions of another under a power given to
define them. If the word used by the legislature can in any
of its various uses or meanings be considered appropriate or
applicable, then we cannot say that they did not have a
right to use it in that sense, even although we might be of
opinion that a better and more appropriate one might have
been chosen, and one that people generally would have better
understood.''

It is evident from what we have said, and from the au-
thorities cited, that appellee's objection to said act, on ac-
count of the use of the word ''defining'' in the title of said
act is not tenable, but that the title of said act is broad
enough to cover said act, even if it creates a new superior
court, or a new superior court district, or both.

It is next insisted by appellee that said act if valid creates
a new and independent court in Marion and Shelby counties,

and that therefore it is unconstitutional so far as it attempts to appoint the judge of room number five of the Superior Court of Marion County judge of the court so created, because the Constitution vests that power in the Governor.

A superior court consisting of three judges was established in Marion county by authority of an act passed in 1871 (Acts 1871 p. 48). Said act provided that said court should have a seal, "which shall contain on the face, the words, 'Superior Court of ——— County,' filling the blank according to the name of the county." It was held that said court, although presided over by more than one judge, was only one court. *Richcreek* v. *Russell* (1904), 34 Ind. App. 217, 230.

In 1907 (Acts 1907 p. 360, §1462 Burns 1908) an act was passed providing that said court "shall consist of five judges." At the same session of the legislature it was enacted that "in all counties of this State, having a superior court of two or more judges, such court shall be divided into rooms and such rooms numbered consecutively, beginning with No. 1, and the judges of said courts shall be nominated and elected by rooms: Provided, that any one of said judges shall have full power and authority to sit as judge in the other rooms of said court." Acts 1907 p. 42, §1463 Burns 1908. The effect of the act was to divide the Superior Court in Marion County into five rooms or divisions, and require that the judges be nominated and elected by rooms or divisions; but notwithstanding this any one of the judges was authorized to sit as judge in the other rooms or divisions. Whether the judges would have had this power in the absence of a provision authorizing it, we need not determine.

The question is whether the act of 1911 (Acts 1911 p. 103) created a new and independent superior court in Marion county and in Shelby county, without affect-

5. ing the Superior Court of Marion County, with its five judges, or whether said act abolished the Superior

Court of Marion County, and created in its place a new court named the Marion Superior Court. If it did either, the judgment must be affirmed, because the legislature has no power, under the Constitution, to fill a vacancy in a judicial office.

The proper answer to these questions depends on the construction that must be given to said act of 1911. Said act is vague and uncertain in some of its provisions, and

6. if words are taken in their plain, exact and literal sense some provisions may be contradictory. But as said by the court in the case of *Clare* v. *State, supra,* page 25: "We do not understand that this court is bound, in the interpretation and construction of a statute, to take the words used therein in their plain, exact and literal sense. On the contrary, the true rule is, and always has been, as recognized in many decisions of this court, to make the legislative intention in the enactment of the particular statute, the chief guide of the court in its interpretation and construction. If the object, purpose and intention of the legislature, in the enactment of the particular statute, can be fairly ascertained and arrived at, then it is the duty of the court to overlook and disregard all apparent inaccuracies and mistakes in the mere verbiage or phraseology of the statute, and, if possible, to give force and effect to the evident reason, spirit and intention of the law. This, we think, is the true and only safe rule for the guidance of the courts in all statutory exposition and construction, and as such it has been recognized and acted upon by this court, in a large number of its reported decisions. We cite only a limited number of these decisions. *Mayor, etc.,* v. *Weems* [1854], 5 Ind. 547; *Shoemaker* v. *Smith* [1871], 37 Ind. 122; *Garrigus* v. *Board, etc.* [1872], 39 Ind. 66; *State, ex rel.,* v. *Tucker* [1874], 46 Ind. 355; *State, ex rel.,* v. *Mayor, etc.* [1867], 28 Ind. 248; *Zorger* v. *City of Greensburgh* [1877], 60 Ind. 1. It has been well said that it is the duty of courts to execute all laws according to their true intent and mean-

ing; and that intent, when collected from the whole and every part of a statute, must prevail even over the literal import of terms, and control the strict letter of the law, when the latter would lead to possible injustice and contradictions. Where the constitutionality of a statute is in question, and an adherence to the strict letter of the law might perhaps render the statute unconstitutional and void, while a liberal construction of the act, in accordance with the evident intention and meaning of the legislature, would remove all doubts as to its constitutionality, in such case, it seems to us that it would be the manifest, if not imperative, duty of the courts to give the statute such liberal construction as, by giving effect to the legislative intention, would sustain and not defeat the law in question. For it is clearly the duty of the courts, when the constitutionality of a statute is merely doubtful, to sustain the law, if it can be done by any fair construction. *Maize* v. *State* [1853], 4 Ind. 342; *Stocking* v. *State* [1855], 7 Ind. 326; and *Shoemaker* v. *Smith, supra.*"

It was said by the court in the case of *Storms* v. *Stevens* (1885), 104 Ind. 46, 50, that "In the construction of statutes, the prime object is to ascertain and carry out the purpose and intent of the legislature. To do this, the words used in the statute should be first considered in their literal and ordinary signification. But if by giving them such a signification the meaning of the whole statute is rendered doubtful, or is made to lead to contradictions or absurd results, the whole statute must be looked to, and the intent as collected therefrom must prevail over the literal import of terms and detached clauses and phrases. *Mayor, etc.,* v. *Weems* [1854], 5 Ind. 547; *Smith* v. *Moore* [1883], 90 Ind. 294, 305, and cases there cited."

In the case of *State Board, etc.,* v. *Holliday* (1898), 150 Ind. 216, 233, 42 L. R. A. 826, this court said: "Sutherland, Stat. Constr. §218, says: 'When the intention can be collected from the statute, words may be modified, altered or

State, *ex rel., v.* Bartholomew—176 Ind. 182.

supplied so as to obviate any repugnancy or inconsistency with such intention.' To the same effect is Endlich, Interp. of Stat. §365; Potter's Dwarris, Statutes 175-180."

In the case of *City of Indianapolis* v. *Huegele* (1888), 115 Ind. 581, 588, this court said: "So, it has been said, that it is an established rule, applicable to the construction of all remedial statutes, that cases within the reason, though not within the letter of a statute, shall be embraced by its provisions, and that cases within the reason, though not within the letter, shall be taken to be within the statute. *State* v. *Canton* [1868], 43 Mo. 48; *People, ex rel.,* v. *Lacombe* [1886], 99 N. Y. 43, 1 N. E. 599; *Middleton* v. *Greeson* [1886], 106 Ind. 18." The following authorities are to the same effect: *State, ex rel.,* v. *Insurance Co., etc.* (1888), 115 Ind. 257, 264, and cases cited; *Middleton* v. *Greeson* (1886), 106 Ind. 18, and cases cited; *Miller* v. *State, ex rel.* (1886), 106 Ind. 415, 423, 424; *Krug* v. *Davis* (1882), 87 Ind. 590, 595, 596; *Warren* v. *Britton* (1882), 84 Ind. 14, 22, 23; *McComas* v. *Krug* (1882), 81 Ind. 327, 332, 333, 42 Am. Rep. 135; *City of Evansville* v. *Summers* (1886), 108 Ind. 189, 193; *Hargis* v. *Board, etc.* (1905), 165 Ind. 194-196.

It is evident that the purpose of the legislature in passing the act of 1911 (Acts 1911 p. 103) was to relieve the Shelby Circuit Court, without increasing the number 7. of judges in the State, and without affecting the Superior Court of Marion County, except as to the terms and proceedings in room five of said court.

Keeping in view this purpose of the legislature, and said rules governing the construction of statutes, it is manifest that the legislature by said act intended to provide a superior court in Shelby county, to be called the Shelby Superior Court, and to continue the Superior Court of Marion County, divided into rooms or divisions numbered from one to five inclusive, and presided over by its five judges, as it existed when said act was passed, with the same jurisdiction it then

had, except as such act affects the terms and proceedings of room five of said court.

There is no provision in said act of 1911 repealing said act of 1871 under which the Superior Court of Marion County was created, nor is there any thing in said act of 1911 from which it can fairly be inferred that the legislature intended to abolish said court and create another court. On the contrary, although it is provided in §20 of said act of 1911 that "all laws and parts of laws inconsistent with the provisions of this act are hereby repealed," it is expressly provided in said section of said act that "nothing in this act shall be so construed as to affect any of the existing laws pertaining to the courts of Marion county, Indiana, except in so far as the provisions of this act shall affect the terms and proceedings of the Superior Court of Marion County in room number five of said county." It is evident therefore, that any provision of said act of 1911, which but for said provision in §20 would affect the Superior Court of Marion County, affects only room five of said court as to its terms and proceedings.

It is provided by said §20 (1) that §3, which fixes the term of said court in Marion county to begin on the Mondays succeeding the terms of court in Shelby county, and to continue for six weeks during each term, if the business thereof shall require it, and §19 of said act, concerning the terms of said court, apply only to room or division number five of said court, and this is true also of the sections concerning the jurisdiction of said court in Marion county; (2) that the jurisdiction of room or division number five is the same as the other rooms of said court under the law in force when the act of 1911 was passed, except that it also has such additional jurisdiction as is given by said act of 1911; (3) that the Shelby Superior Court has such jurisdiction only as is given by said act of 1911; (4) that the taking effect of said act of 1911 did not in any way

affect or change the authority of any one of the judges of said Superior Court of Marion County to sit as judge in the other rooms or divisions of said court; (5) that the proceedings of said room or division five of said court may be authenticated in the same manner as if said act of 1911 had never been passed, and the proceedings of the Shelby Superior Court may be authenticated by the certificate of the clerk thereof and the seal of said court, as the proceedings of other courts are authenticated.

Appellee concedes that the legislature has the power to create a superior court in Shelby county, consisting of five judges, and by attaching such county to Marion county form a superior court district of the two counties, and require the five judges of the existing Superior Court in Marion County to hold such superior court in the added county of Shelby, as well as the superior court in Marion county, during the remainder of the terms of such judges.

Judges of the circuit and the superior courts are not county officers, but belong to the judicial department and perform state functions in the discharge of their official duties; and they may be required to perform these duties in counties attached to their judicial districts after their election. Whether they could be compelled to hold court outside their respective districts, it is not necessary to determine in this case.

Our attention has not been called to any provision of the Constitution, and we know of none, that prevents the legislature from providing a superior court in Shelby county, and adding it to the district of room or division five of the Superior Court of Marion County, and requiring the judge of said room or division to hold court in the Shelby Superior Court, as well as in said room or division five during the remainder of his term, and providing for the election of his successor by the judicial

district composed of both of said counties. This was the evident purpose of the legislature in passing said act of 1911.

Appellee contends that this leads to the incongruous situation "that one judge of the Superior Court of Marion County would be exercising a different jurisdiction from the other judges thereof," and "would receive a different compensation than the other judges of said court." There is nothing in the Constitution to prevent the legislature from giving a different jurisdiction to each room or division of the Superior Court of Marion County, or from giving a different jurisdiction to each of the superior courts of a district composed of more than one county. When the nineteenth judicial circuit was composed of the counties of Marion and Hendricks, the circuit court of Hendricks county had jurisdiction of criminal cases, while the circuit court of Marion county had no such jurisdiction, that being given to the Criminal Court of Marion County. At the present time the jurisdiction of the circuit courts is not the same in all counties in the State. Wherever there is a probate court and a criminal court, as in Marion county, the circuit court has no probate nor criminal jurisdiction, while in the counties where there is no probate nor criminal court the circuit court has jurisdiction of such matters. Nor is the jurisdiction of the superior courts the same in all the counties where such courts exist. In some counties such courts have no probate nor criminal jurisdiction (§§1472, 1502, 1561 Burns 1908, §1351 R. S. 1881, Acts 1895 p. 52, §10, Acts 1897 p. 20, §2), while in other counties they have a part or all of such jurisdiction (§§1527, 1540, 1574 Burns 1908, Acts 1907 p. 170, §8, Acts 1899 p. 564, §5).

It is not a question of whether such legislation is desirable or wise, but whether the legislature has such power. If it has, the courts cannot interfere with such laws, even if they are deemed unwise, unjust or inexpedient. *Smith* v. *Indianapolis St. R. Co.* (1902), 158 Ind. 425,

427; *State, ex rel., v. McClelland* (1894), 138 Ind. 395, 399; *Hedderich v. State* (1885), 101 Ind. 564, 51 Am. Rep. 768; 2 Ind. Dig. Ann. p. 725, §§39, 40.

There is nothing in the Constitution to prevent the legislature from increasing or diminishing the salary of a judge of a superior court during his term of office. *Board, etc., v. Lindeman* (1905), 165 Ind. 186, 191. It has been held that the discretion of the legislature in passing laws fixing the salaries of public officers cannot be inquired into by the courts. *Harmon v. Board, etc.* (1899), 153 Ind. 68, 71; *Board, etc., v. Lindeman, supra.*

Even if the judge of room or division five of said court would not receive under said act of 1911 the same salary as the judges of the other rooms of said court, a question we need not and do not decide, and if the legislature had no power to make this difference in the salaries of such judges, this would not render the entire act invalid. *Harlin v. Schafer* (1907), 169 Ind. 1; *Swartz v. Board, etc.* (1902), 158 Ind. 141, 151, 152; *Martindale v. Town of Rochester* (1908), 171 Ind. 250, 264; *State v. Barrett* (1909), 172 Ind. 169, 174.

The names "Superior Court of Marion County" and "Marion Superior Court" seem to be used interchangeably in some sections of said act, as are the names "Shelby Superior Court" and "Superior Court of Shelby County." However, what was intended by the use of said names in each instance where used can readily be determined from an examination of said act, and the act which it affects. *Indianapolis St. R. Co. v. Lawn* (1903), 30 Ind. App. 515, 518, 519.

Under the act of 1911 it was the duty of appellee, as the judge of room or division number five of the Superior Court of Marion County, to appear and preside over the Shelby Superior Court, as said county and court were in his judicial district. It follows that the court erred in sustaining the demurrer to the complaint.

Judgment reversed, with instructions to overrule said demurrer, and for further proceedings not inconsistent with this opinion.